UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

JUSTIN JONES,

                              Plaintiff,

                                                          5:22-CV-1188
v.                                                        (BKS/ML)

JOHN DOE #1, State Police Officer
K-9 Handler; and JOHN DOE #2, State
Police Officer,

                              Defendants.

_____

APPEARANCES:                                OF COUNSEL:

JUSTIN JONES
   *Pro se* Plaintiff
Orleans Correctional Facility
3531 Gaines Basin Road
Albion, New York 14411

MIROSLAV LOVRIC, United States Magistrate Judge

### **ORDER and REPORT-RECOMMENDATION**

The Clerk has sent this *pro se* Complaint (Dkt. No. 1) together with (1) an amended *in forma pauperis* application, and (2) letter motion requesting assistance in naming the Doe Defendants to the Court for review.  (Dkt. Nos. 1, 4, 5, 6.)  For the reasons discussed below, I (1) grant Plaintiff's amended *in forma pauperis* application, (2) recommend that Plaintiff's motion requesting assistance in naming the Doe Defendants be granted, and (3) recommend that Plaintiff's Complaint be accepted in part for filing and dismissed in part without leave to replead. (Dkt. Nos. 1, 4, 5, 6.)

## I.      BACKGROUND

Construing the Complaint as liberally[1] as possible, Plaintiff Justin Jones ("Plaintiff")

brings this action alleging that Defendants John Doe #1 and John Doe #2—who are both New

York State police officers—violated his civil rights.  (*See generally* Dkt. No. 1.)  More

specifically, Plaintiff alleges that on February 27, 2021, at approximately 11:30 p.m., he was

operating a vehicle with a suspended drivers license in Auburn, New York, when he encountered

Defendants.  (Dkt. No. 1 at 2.)  Plaintiff alleges that Defendants turned on their lights to initiate a

traffic stop, Plaintiff did not stop his vehicle immediately, then stopped his vehicle, exited his

vehicle, and ran into the "bushes."  (*Id*.)  Plaintiff alleges that Defendants directed him to stop

then Defendant John Doe #1 released his K-9, who ran after Plaintiff.  (*Id*.)  Plaintiff alleges that

when the K-9 reached him, he stopped because he did not want to get bit, but that the K-9

"attacked anyway, latching onto his lower leg."  (*Id*.)  Plaintiff alleges that Defendants restrained

him, face down on the ground, and placed handcuffs on him behind his back.  (*Id*.)  Plaintiff

alleges that the K-9 continued to bite him "for a few minutes resulting in 13 different bites and

over 70 staples and stitches."  (*Id*. at 2-3.)

Based on these factual allegations, Plaintiff appears to assert the following two claims:

(1) a claim of excessive force against Defendants pursuant to 42 U.S.C. § 1983 and the Fourth

Amendment; and (2) a claim of failure to intervene against Defendants pursuant to 42 U.S.C. §

1983 and the Fourth Amendment.  (*See* Dkt. No. 1.)  As relief, Plaintiff seeks damages in the

amount of $2,500,000.00.  (Dkt. No. 1 at 4.)

Plaintiff also filed an amended application to proceed *in forma pauperis*.  (Dkt. No. 4.)

---

[1]      The court must interpret *pro se* complaints to raise the strongest arguments they suggest.
*Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790
(2d Cir. 1994)).

## II.     PLAINTIFF'S AMENDED APPLICATION TO PROCEED *IN FORMA PAUPERIS*

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010).[2]  "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Cash*, 2010 WL 5185047, at *1 (citing 28 U.S.C. § 1915(b); *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

Upon review, the Court finds that Plaintiff has submitted a completed amended IFP application which has been certified by an appropriate official at his facility (Dkt. No. 4), and which demonstrates economic need.  *See* 28 U.S.C. § 1915(a)(2).  Plaintiff has also filed the inmate authorization required in the Northern District. (Dkt. No. 5.)

Accordingly, Plaintiff's amended application to proceed with this action IFP is granted. (Dkt. No. 4.)

## III.    RELEVANT LEGAL STANDARD GOVERNING INTIAL REVIEW OF A COMPLAINT

Having found that Plaintiff meets the financial criteria for commencing this action *in forma pauperis*, and because Plaintiff seeks relief from an officer or employee of a governmental

---

[2]     Section § 1915(g) prohibits a prisoner from proceeding *in forma pauperis* where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted.  *See* 28 U.S.C. § 1915(g).  The Court has reviewed Plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service.  *See* http://pacer.uspci.uscourts.gov.  It does not appear from that review that Plaintiff accumulated three strikes for purposes of 28 U.S.C. § 1915(g) as of the date this action was commenced.

entity, the Court must consider the sufficiency of the allegations set forth in the Complaint in light of 28 U.S.C. §§ 1915(e) and 1915A(a).  Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that— . . . (B) the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).[3]

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a government entity or officer or employee of a government entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A(b); *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curium) (noting that Section 1915A applies to all actions brought by prisoners against governmental officials even when plaintiff paid the filing fee).

Additionally, when reviewing a complaint, a court may also look to the Federal Rules of Civil Procedure.  Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief."  *See* Fed. R. Civ. P. 8(a)(2).  The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of

---

[3]     To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis in either law or in fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

res judicata is applicable." *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, C.J.) (quoting *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rule 8 "demands more than an unadorned the-defendant-unlawfully-harmed-me accusation." *Id.* Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

## IV.     ANALYSIS

Having reviewed the Complaint, and construing the allegations liberally, I recommend that it be dismissed in part without leave to replead and accepted in part for filing.

### A.      Official Capacity Claims

The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity." U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the

United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.");

*Hans v. Louisiana*, 134 U.S. 1, 10-21 (1890); *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S.

261, 267 (1997); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).

Eleventh Amendment immunity is lost only if Congress unequivocally abrogates states'

immunity or a state expressly consents to suit.  *Gollomp v. Spitzer*, 568 F.3d 355, 365-66 (2d Cir.

2009).  It is well-settled that Congress did not abrogate states' immunity through Section 1983,

*see Quern v. Jordan*, 440 U.S. 332, 343-45 (1979), and that New York State has not waived its

immunity from suit on the claims asserted in Plaintiff's Complaint.  *See generally Trotman v.*

*Palisades Interstate Park Comm'n*, 557 F.2d 35, 38-40 (2d Cir. 1977); *Dawkins v. State of New*

*York*, 93-CV-1298, 1996 WL 156764 at *2 (N.D.N.Y. 1996) (Pooler, J.).

     The Eleventh Amendment bars suits for damages against state officials acting in their

official capacities.  *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (a claim for damages

against state officials in their official capacity is considered to be a claim against the State and is

therefore barred by the Eleventh Amendment); *Ying Jing Gan v. City of New York*, 996 F.2d 522,

529 (2d Cir. 1993) ("To the extent that a state official is sued for damages in his official capacity,

such a suit is deemed to be a suit against the state, and the official is entitled to invoke the

Eleventh Amendment immunity belonging to the state."); *Severino v. Negron*, 996 F.2d 1439,

1441 (2d Cir. 1993) ("[I]t is clear that the Eleventh Amendment does not permit suit [under

Section 1983] for money damages against state officials in their official capacities.")

     Accordingly, to the extent that Plaintiff seeks monetary damages under Section 1983

against any Defendant in his or her official capacity, I recommend that such claims be dismissed

with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) as barred by the

Eleventh Amendment.

### B.        Individual Capacity Claims

The Fourth Amendment to the Constitution (as applicable to the actions of local police departments and police officers through the Fourteenth Amendment) protects the right of the people to be free from unreasonable searches or seizures.  *See* U.S. Const. amend. IV.  In particular, the Fourth Amendment prohibits the police from using unreasonable or excessive force when they engage in the arrest of a person.  *See Graham v. Connor*, 490 U.S. 386 (1989); *Cugini v. City of New York*, 941 F.3d 604, 612 (2d Cir. 2019).  But "[b]ecause 'the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it, determining whether the amount of force an officer used is reasonable 'requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'"  *Cugini*, 941 F.3d at 612 (quoting *Graham*, 490 U.S. at 396).  Thus, the determination whether the police have used excessive force in the course of arresting a suspect "'requires careful attention to the facts and circumstances of each particular case, including' (1) 'the severity of the crime at issue,' (2) 'whether the suspect poses an immediate threat to the safety of the officers or others,' and (3) 'whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight.'"  *Id.* (quoting *Graham*, 490 U.S. at 397).

In addition, "[i]t is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence."  *Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014) (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)); *accord Sloley v. VanBramer*, 945 F.3d 30, 46-47 (2d Cir. 2019).  "As such, an officer who fails to intervene where he or she observes or has reason to know that excessive force is being used or a

constitutional violation has been committed by a fellow officer is liable for the preventable harm caused by that officer." *Portillo v. Webb*, 16-CV-4731, 2017 WL 4570374, at *4 (S.D.N.Y. Oct. 11, 2017) (collecting cases), *report and recommendation adopted by* 2018 WL 481889 (S.D.N.Y. Jan. 17, 2018).

Mindful of the Second Circuit's direction that a *pro se* plaintiff's pleadings must be liberally construed, *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), I recommend that Plaintiff's Fourth Amendment excessive force and failure to intervene claims against Defendants John Doe #1 and John Doe #2 in their individual capacities survive initial review under 28 U.S.C. §§ 1915(e) and 1915A. *See Jackson v. Cnty. of Ulster*, 22-CV-0148, 2022 WL 2954370, at *5 (N.D.N.Y. July 26, 2022) (McAvoy, J.) (denying motion to dismiss an excessive force claim where the plaintiff alleged that "the K-9 handled by [the defendant] bit Plaintiff while Plaintiff was handcuffed behind his back and offering no resistance or threat" and holding that "the use of a police K-9 to bite, or to bite and hold, a suspect can constitute a significant degree of force."). In making such finding, I express no opinion regarding whether the claims could survive a properly filed motion to dismiss or motion for summary judgment.

## V.    OPPORTUNITY TO REPLEAD

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to replead at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to replead is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding*

*L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.").  Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).[4]

With respect to Plaintiff's claims against Defendants in their official capacities "[b]ecause these claims are barred by the Eleventh Amendment, leave to amend would be futile." *Verdi v. Farah*, 22-CV-0825, 2022 WL 4236401, at *9 n.9 (N.D.N.Y. Sept. 14, 2022) (Sannes, C.J.).  As a result, I recommend that those claims be dismissed without leave to replead.

## VI.  PLAINTIFF LETTER MOTION REQUESTING ASSISTANCE IDENTIFIYING DEFENDANTS AND SERVICE OF THE COMPLAINT

Should the District Judge adopt the undersigned's recommendation, the only defendants are Doe defendants, whose identities are not presently known.  Generally, when a *pro se* plaintiff includes Doe defendants, together with named defendants, the complaint is served upon the named defendants and the plaintiff pursues discovery to identify the Doe defendants.  In this case, however, no named defendants are parties to the litigation.

Pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (2d. Cir. 1997) (per curiam), the undersigned recommends that the New York State Attorney General's Office be directed to take

---

[4]      *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

reasonable steps to attempt to ascertain the full names of the remaining Doe defendants.[5]  It is further recommended that the Attorney General's Office be requested, to the extent that it is able to identify the Doe defendants, to provide the address where the Doe defendants can currently be served.  It is recommended that the Attorney General's Office be advised that it need not undertake to defend or indemnify the individuals at this juncture.  Such a directive would merely provide a means by which Plaintiff may name and properly serve the defendants as instructed by the Second Circuit in *Valentin*.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's amended application to proceed IFP (Dkt. No. 4) is **GRANTED only for purposes of filing and any appeal unless the trial court certifies in writing that the appeal is not taken in good faith.**  *See* 28 U.S.C. § 1915(a)(3); and it is further

**ORDERED** that the Clerk of the Court (1) provide the Superintendent of the facility that Plaintiff has designated as his current location with a copy of Plaintiff's inmate authorization form (Dkt. No. 5) and notify that official that Plaintiff has filed this action and is required to pay the Northern District of New York the entire statutory filing fee of $350.00 in installments, over time, pursuant to 28 U.S.C. § 1915; and (2) provide a copy of Plaintiff's inmate authorization form (Dkt. No. 5) to the Financial Deputy of the Clerk's office; and it is further respectfully

**RECOMMENDED** that Plaintiff's Complaint (Dkt. No. 1) be **ACCEPTED for filing** to the extent that it asserts claims pursuant to the Fourth Amendment for excessive force and failure to intervene against Defendants John Doe #1 and John Doe #2 in their individual capacities, and **DISMISSED WITHOUT LEAVE TO REPLEAD** to the extent that it asserts claims pursuant

---

[5]     In *Valentin*, 121 F.3d at 75-75, the Second Circuit held that district courts must assist *pro se* incarcerated litigants with their inquiry into the identities of unknown defendants.

to 42 U.S.C. § 1983 against Defendants in their official capacity, pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) as barred by the Eleventh Amendment; and it is further respectfully

    **RECOMMENDED** that the Court grant Plaintiff's Letter Motion (Dkt. No. 6); and it is further respectfully

    **RECOMMENDED** that, should the District Judge adopt the Report-Recommendation, to the extent possible, the New York State Attorney General's Office be requested to produce the information specified above regarding the identities of the Doe Defendants **within thirty (30) days** of the filing date of the Decision and Order accepting this recommendation, and that, upon receipt of a response from the New York State Attorney General's Office, the Clerk return this file to the Court for further review; and it is further

    **ORDERED** that the Clerk of the Court shall file a copy of this order, report, and recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules.[6]

    **NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[7]  Such objections shall be filed with the Clerk of the Court.  **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**.  28 U.S.C. § 636(b)(1) (Supp. 2013);

---

[6]    The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

[7]    If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).


Dated: March  6 , 2023
      Binghamton, New York

                                                      Miroslav Lovric
                                                      U.S. Magistrate Judge

2010 WL 5185047
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

David J. CASH, Plaintiff,

v.

BERNSTEIN, MD, Defendant.

No. 09 Civ.1922(BSJ)(HBP).
|
Oct. 26, 2010.

*REPORT AND RECOMMENDATION* [1]

PITMAN, United States Magistrate Judge.

**\*1** TO THE HONORABLE BARBARA S. JONES, United States District Judge,

I. *Introduction*

By notice of motion dated March 4, 2010 (Docket Item 11), defendant moves pursuant to 28 U.S.C. § 1915(g) to revoke plaintiff's *in forma pauperis* ("IFP") status on the ground that plaintiff has previously had at least three Section 1983 actions dismissed as frivolous, malicious or failing to state a claim upon which relief could be granted, and has not shown that he is in imminent danger of serious physical injury. Defendant further seeks an order directing that the action be dismissed unless plaintiff pays the full filing fee within thirty (30) days. For the reasons set forth below, I respectfully recommend that defendant's motion be granted.

II. *Facts*

Plaintiff, a sentenced inmate in the custody of the New York State Department of Correctional Services, commenced this action on or about January 12, 2009 by submitting his complaint to the Court's Pro Se office. Plaintiff alleges, in pertinent part, that he has "a non-healing ulcer that is gane green [*sic* ]" and that defendant Bernstein "did not want to treat the ulcer right" (Complaint, dated March 3, 3009 (Docket Item 2) ("Compl."), at 3).

The action was originally commenced against two defendants —Dr. Bernstein and Dr. Finkelstein. The action was dismissed as to Dr. Finkelstein because the complaint contained no allegations whatsoever concerning Dr. Finkelstein (Order dated February 18, 2010 (Docket Item 9)).

On March 4, 2010, the sole remaining defendant—Dr. Bernstein—filed the current motion. Plaintiff failed to submit a response. Accordingly, on August 20, 2010, I issued an Order advising plaintiff that if he wished to oppose the motion, he must submit his opposition by September 15, 2010 and that after that date I would consider the motion fully submitted and ripe for decision (Order dated August 20, 2010 (Docket Item 15)). The only submission plaintiff has made in response to my Order is a multi-part form issued by the New York State Department of Correctional Services entitled "Disbursement or Refund Request." [2] By this form, plaintiff appears to request that the New York State Department of Correctional Services pay the filing fee for this action. The form is marked "Denied."

III. *Analysis*

28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged. Although an indigent, incarcerated individual need not prepay the filing fee at the time at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts. 28 U.S.C. § 1915(b); *Harris v. City of New York,* 607 F.3d 18, 21 (2d Cir.2010). To prevent abuse of the judicial system by inmates, paragraph (g) of this provision denies incarcerated individuals the right to proceed without prepayment of the filing fee if they have repeatedly filed meritless actions, unless such an individual shows that he or she is in imminent danger of serious physical injury. *See* *Ortiz v. McBride,* 380 F.3d 649, 658 (2d Cir.2004) ("[T]he purpose of the PLRA ... was plainly to curtail what Congress perceived to be inmate abuses of the judicial process."); *Nicholas v. Tucker,* 114 F.3d 17, 19 (2d Cir.1997). Specifically, paragraph (g) provides:

> **\*2** In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility,

brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

If an inmate plaintiff seeks to avoid prepayment of the filing fee by alleging imminent danger of serious physical injury, there must be a nexus between the serious physical injury asserted and the claims alleged. *Pettus v. Morgenthau,* 554 F.3d 293, 298 (2d Cir.2009).

Section 1915(g) clearly prevents plaintiff from proceeding in this action without prepayment of the filing fee. The memorandum submitted by defendant establishes that plaintiff has had his IFP status revoked on at least four prior occasions as a result of his repeatedly filing meritless actions.

- In 2005, plaintiff commenced an action in the United States District Court for the Northern District of New York seeking to have his infected leg amputated. *Nelson [3] v. Lee,* No. 9:05–CV–1096 (NAM)(DEP), 2007 WL 4333776 (N.D.N.Y. Dec. 5, 2007). In that matter, the Honorable Norman A. Mordue, Chief United States District Judge, accepted and adopted the Report and Recommendation of the Honorable David E. Peebles, United States Magistrate Judge, that plaintiff had brought three or more prior actions that had been dismissed for failure to state a claim and that plaintiff's IFP status should, therefore, be revoked. 2007 WL 4333776 at *1–*2.

- In *Nelson v. Nesmith,* No. 9:06–CV–1177 (TJM)(DEP), 2008 WL 3836387 (N.D.N.Y. Aug. 13, 2008), plaintiff again filed an action concerning the medical care he was receiving for his left leg. The Honorable Thomas J. McAvoy, United States District Judge, accepted the Report and Recommendation of Magistrate Judge Peebles, and revoked plaintiff's IFP status and dismissed the action on the ground that plaintiff had previously commenced at least three actions that had

been dismissed on the merits. 2008 WL 3836387 at *1, *7.

- In *Nelson v. Spitzer,* No. 9:07–CV–1241 (TJM) (RFT), 2008 WL 268215 (N.D.N.Y. Jan. 29, 2008), Judge McAvoy again revoked plaintiff's IFP status on the ground that plaintiff had commenced three or more actions that constituted "strikes" under Section 1915(g) and had not shown an imminent threat of serious physical injury. 2008 WL 268215 at *1–*2.

- Finally, in *Nelson v. Chang,* No. 08–CV–1261 (KAM)(LB), 2009 WL 367576 (E.D.N.Y. Feb. 10, 2009), the Honorable Kiyo A. Matsumoto, United States District Judge, also found, based on the cases discussed above, that plaintiff had exhausted the three strikes permitted by Section 1915(g) and could not proceed IFP in the absence of a demonstration of an imminent threat of serious physical injury. 2009 WL 367576 at *2–*3.

**\*3** As defendant candidly admits, there is one case in which plaintiff's leg infection was found to support a finding of an imminent threat of serious physical injury sufficient to come within the exception to Section 1915(g). *Nelson v. Scoggy,* No. 9:06–CV–1146 (NAM)(DRH), 2008 WL 4401874 at *2 (N.D.N.Y. Sept. 24, 2008). Nevertheless, summary judgment was subsequently granted for defendants in that case, and the complaint was dismissed. Judge Mordue concluded that there was no genuine issue of fact that plaintiff had received adequate medical care for his leg wound and that the failure of the leg to heal was the result of plaintiff's own acts of self-mutilation and interference with the treatment provided. *Nelson v. Scoggy,* No. 9:06–CV–1146 (NAM)(DRH), 2009 WL 5216955 at *3–*4 (N.D.N.Y. Dec. 30, 2009). [4]

In light of the foregoing, there can be no reasonable dispute that plaintiff has exceeded the three "strikes" allowed by Section 1915(g) and that he cannot, therefore, proceed here without prepaying the filing fee unless he demonstrates an imminent threat of serious physical injury. Plaintiff has declined to attempt to make this showing in response to defendant's motion, and the only suggestion in the record of serious physical injury is the bare statement in the complaint that plaintiff "need[s] to go back to a wound speci [a]list before the gane green [*sic* ] kills [him]" (Compl. at 5). "However, unsupported, vague, self-serving, conclusory speculation is not sufficient to show that Plaintiff is, in fact, in

imminent danger of serious physical harm." *Merriweather v. Reynolds,* 586 F.Supp.2d 548, 552 (D.S.C.2008), *citing Ciarpaglini v. Saini,* 352 F.3d 328, 330 (7th Cir.2003) *and White v. Colorado,* 157 F.3d 1226, 1231–32 (10th Cir.1998); *see also Martin v. Shelton,* 319 F.3d 1048, 1050 (8th Cir.2003) (imminent danger exception to Section 1915(g) requires "specific fact allegations of ongoing serious physical injury, or of a pattern of misconduct evidencing the likelihood of imminent serious physical injury"). Given the plaintiff's history, as set forth in the cases described above, I conclude that this vague statement is insufficient to support a finding that plaintiff is in imminent danger of serious physical injury. [5]

### IV. *Conclusion*

Accordingly, for all the foregoing reasons, I find that plaintiff has had three or more prior actions dismissed as being frivolous, malicious or failing to state a claim and that plaintiff's *in forma pauperis* status should, therfore, be revoked. If your Honor accepts this recommendation, I further recommend that the action be dismissed unless plaintiff pays the filing fee in full within thirty (30) days of your Honor's final resolution of this motion.

### V. *OBJECTIONS*

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections. *See also* Fed.R.Civ.P. 6(a). Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Barbara S. Jones, United States District Judge, 500 Pearl Street, Room 1920, and to the Chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Jones. FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS *WILL* RESULT IN A WAIVER OF OBJECTIONS AND *WILL* PRECLUDE APPELLATE REVIEW. *Thomas v. Arn,* 474 U.S. 140, 155 (1985); *United States v. Male Juvenile,* 121 F.3d 34, 38 (2d Cir.1997); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1992); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983).

### All Citations

Not Reported in F.Supp.2d, 2010 WL 5185047

## Footnotes

1   At the time the action was originally filed, the Honorable Leonard B. Sand, United States District Judge, granted plaintiff's application for *in forma pauperis* status based on plaintiff's *ex parte* submission (Docket Item 1). Although the present application seeking to revoke plaintiff's *in forma pauperis* status is non-dispositive, I address it by way of a report and recommendation to eliminate any appearance of a conflict between the decision of a district judge and that of a magistrate judge.

2   Plaintiff sent this form directly to my chambers, and it has not been docketed by the Clerk of the Court. The form will be docketed at the time this Report and Recommendation is issued.

3   It appears that plaintiff uses the names David J. Cash and Dennis Nelson interchangeably. In his complaint in this matter, plaintiff states that the Departmental Identification Number, or DIN, assigned to him by the New York State Department of Correctional Services ("DOCS") is 94–B–0694 (Compl. at 7). DOCS inmate account records submitted by plaintiff in connection with his application for IFP status indicate that DIN 94–B–0694 is assigned to Dennis Nelson. In addition, the DOCS form described in footnote two bears the docket number of this action, but is signed in the name of Dennis Nelson and was sent in an envelope identifying the sender as Dennis Nelson. A subsequent action has been filed in this Court in which the plaintiff identifies

himself as Dennis Nelson but lists his DIN as 94–B–0694, the same DIN used by plaintiff here. Finally, plaintiff has submitted nothing to controvert the assertion in defendant's papers that David Cash and Dennis Nelson are the same person. In light of all these facts, I conclude that David Cash and Dennis Nelson are both names used by plaintiff.

4    Although the form complaint utilized by plaintiff expressly asks about prior actions involving the same facts, plaintiff disclosed only the *Scoggy* action and expressly denied the existence of any other actions relating to his imprisonment (Compl. at 6).

5    Plaintiff has sent me several letters describing his wound and its symptoms in detail, and I have no doubt that the wound is serious. However, in granting summary judgment dismissing an action last year based on the same allegations, Judge Mordue of the Northern District found that there was no genuine issue of fact that plaintiff's own conduct was responsible for the ineffectiveness of the treatment he was provided:

Furthermore, to the extent that Nelson's medical treatment was delayed, much of the delay was due to his own refusal to cooperate with medical staff and his self-mutilations. Nelson's actions to thwart the medical treatment of his wound cannot be construed as interference or indifference by anyone else.... [T]he medical treatment Nelson received complied with constitutional guarantees as it was appropriate, timely, and delayed only by Nelson's own actions.

*Nelson v. Scoggy, supra,* 2009 WL 5216955 at *4.

Given plaintiff's total failure to respond to the pending motion and his failure to even deny that he is actively thwarting treatment of his wound, it would be sheer speculation for me to conclude that he is in imminent danger of a serious injury as a result of defendant's conduct.

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

---

Dawkins v. State, Not Reported in F.Supp. (1996)

Case 5:22-cv-01188-BKS-ML    Document 10    Filed 03/06/23    Page 17 of 55

1996 WL 156764
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Emon DAWKINS, Plaintiff,

v.

The STATE OF NEW YORK, Trooper Antone
R. Irwin of the New York State Police and The
New York State Police Department, Defendants.

No. 93-CV-1298 (RSP/GJD).
|
March 28, 1996.

**Attorneys and Law Firms**

Emon Dawkins, Liverpool, New York, Plaintiff, Pro Se.

Dennis C. Vacco, Attorney General of the State of New York, Syracuse, New York, for Defendants; G. Robert McAllister, Assistant Attorney General, of counsel.

*MEMORANDUM, DECISION AND ORDER*

POOLER, District Judge.

INTRODUCTION

 *1  On June 13, 1992, defendant New York State police officer Antone R. Irwin ("Trooper Irwin") stopped and ticketed plaintiff Emon Dawkins for speeding on the New York State Thruway. Dawkins pled not guilty and elected trial in the Town Court of Dewitt, New York. When Dawkins appeared for trial, he received an additional ticket [1] for driving an unregistered vehicle. The Town Court found Dawkins not guilty of both charges. Dawkins then filed this lawsuit claiming that Trooper Irwin (1) stopped him without probable cause and on racial grounds, and (2) issued the unregistered vehicle citation in retaliation for electing trial on the speeding charge. Dawkins alleges that his Fourth, Sixth, Eighth, and Fourteenth Amendment rights have been violated and seeks redress under 42 U.S.C. §§ 1983 and 1985. Defendants all move for summary judgment pursuant to Fed. R. Civ. P. 56, arguing that Dawkins' claims are barred by the Eleventh Amendment to the United States Constitution.

Because I find that the Eleventh Amendment provides immunity for some defendants on some claims, I grant in part and deny in part, defendants' motion for summary judgment.

DISCUSSION

I. Summary Judgment Standard

Summary judgment is granted when viewing the evidence in a light most favorable to the nonmovant, the court determines that there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Eastman Kodak Co. v. Image Technical Servs., Inc.,* 504 U.S. 451, 456 (1992). A party seeking summary judgment must demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). If the movant satisfies this initial burden, then the burden shifts to the nonmovant to proffer evidence demonstrating that a trial is required because a disputed issue of fact exists. *Weg v. Macchiarola,* 995 F.2d 15, 18 (2d Cir. 1993). The nonmovant must do more than present evidence that is merely colorable, conclusory, or speculative and must present "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986). In short, the nonmovant must demonstrate to the court that issues of fact exist that must be decided by a factfinder, because "they may reasonably be decided in favor of either party." *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2nd Cir. 1990).

II. Pro Se Plaintiff

Because Dawkins is a *pro se* plaintiff, his complaint must be construed liberally and should be dismissed only "if it appears beyond doubt that [he] can prove no set of facts in support of his claim which would entitle him to relief." *Estelle v. Gamble,* 429 U.S. 97, 106 (1976) (quotations omitted).

III. Defendants New York State and the New York State Police Department

It is well settled that "[a]bsent a waiver on the part of the state, or a valid congressional override, the eleventh amendment prohibits federal courts from entertaining suits by private parties against the states." *Farid v. Smith,* 850 F.2d 917, 920-21 (2d Cir. 1988) (citing *Kentucky v. Graham,* 473 U.S. 159 (1985)). When Congress enacted Sections

**Dawkins v. State, Not Reported in F.Supp. (1995)**

Case 5:22-cv-01188-BKS-ML   Document 10   Filed 03/06/23   Page 18 of 55

1983 and 1985, it did not abrogate the state's Eleventh Amendment immunity. *United States v. City of Yonkers,* 880 F. Supp 212, 231 (S.D.N.Y. 1995) (citing *Quern v. Jordan,* 440 U.S. 332 (1979). Because New York State has Eleventh Amendment immunity from suit, Dawkins' claims against defendant New York State are dismissed.

**\*2** It is equally well established that the "Eleventh Amendment's containment of federal judicial power is not restricted to actions where the state is a named defendant, but extends further to those actions where liability, if imposed, must be paid from the state fisc." *New York City Health & Hosp. Corp. v. Perales,* 50 F.3d 129, 134 (2d Cir. 1995). For Eleventh Amendment purposes, governmental entities of a state that are considered "arms of the state" receive Eleventh Amendment immunity. *Will v. Michigan Dep't of Police,* 491 U.S. 58, 70 (1989). Because defendant New York State Police Department is a division of the executive department of New York State, Dawkins claims against the department are dismissed. *See* N.Y.Exec.Law § 210 (McKinney 1993); *Komlosi v. New York State OMRDD,* 64 F.3d 810 (2d Cir. 1995) (holding that OMRDD is an arm of the state and thus cannot be sued under §1983); *see also Oliver Schools, Inc. v. Foley,* 930 F.2d 248, 252 (2d Cir. 1991).

Moreover, New York State and the New York State Police Department are not "person[s]" within the meaning of Sections 1983 and 1985. *See Howlett v. Rose,* 496 U.S. 356, 365 (1990); *see also, Thompson v. State of New York,* 487 F. Supp. 212, 228 (N.D.N.Y. 1979, Munson, J.) (holding that the State of New York and the New York State Police Department are not "persons" for purposes of the threshold requirement of a cause of action under § 1985).

Because defendants New York State and the New York State Police Department (1) have not consented either expressly or impliedly to permit this suit to proceed in federal court and (2) are not "persons" within the meaning of the relevant statutes, I dismiss the claims against these two defendants. [2]

IV. Defendant Antone R. Irwin

　　*A.* Section 1985

Section 1985(3) makes it illegal "[i]f two or more persons ... conspire ... for the purposes of depriving .. any person or class of persons of the equal protection of the laws." 42 U.S.C. § 1985(3). Trooper Irwin is the only person named or mentioned in Dawkins' complaint. Because Dawkins fails to offer any support for his claim that two or more persons conspired to deny him his rights, I must dismiss his Section 1985 claim against Trooper Irwin.

　　*B.* Section 1983

A Section 1983 claim requires that Dawkins prove that (1) Trooper Irwin deprived him of a federal right and (2) Trooper Irwin acted under color of state law. *Gomez v. Toledo,* 446 U.S. 635, 640 (1980).

In his motion for summary judgment, Trooper Irwin spends great energy arguing that a cause of action alleging only that, "harm from official capacity acts is barred by the Eleventh Amendment." McAllister Aff., at ¶ 5. Trooper Irwin is only partially correct.

A suit against Trooper Irwin in his official capacity, is a suit against the state and he is "entitled to invoke the Eleventh Amendment immunity belonging to the state." *Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir. 1993). Therefore, Dawkins' Section 1983 claim made against Trooper Irwin in his official capacity is dismissed.

**\*3** However, a claim against Trooper Irwin in his individual capacity, even when performing official acts, is not afforded Eleventh Amendment protection. *Id.* [3] Although Dawkins' complaint is silent concerning the capacity in which he sues Trooper Irwin, his failure to specify the capacity does not justify an outright dismissal of his claim. *Oliver Schools,* 930 F.2d at 252; *see also Kentucky,* 473 U.S. at 167 n. 14, (1985) (indicating that "in many cases the complaint will not clearly specify whether officials are sued personally, in their official capacity, or both" and "[t]he course of proceedings ... will indicate the nature of the liability sought to be imposed." (citations and internal quotations omitted)). [4]

During oral argument Dawkins stated that his claims against Trooper Irwin are in both his individual and official capacity. Therefore, I accept that Dawkins intends to proceed against

Dawkins v. State, Not Reported in F.Supp. (1995)

Case 5:22-cv-01188-BKS-ML   Document 10   Filed 03/06/23   Page 19 of 55

Trooper Irwin in his individual capacity and find that the Eleventh Amendment does not protect Trooper Irwin from Dawkins' individual capacity claims. 🚩 *Farid, 850 F.2d at 921 (2d Cir. 1988)* (holding that "[t]he eleventh amendment bars recovery against an employee who is sued in his official capacity, but does not protect him from personal liability if he is sued in his 'individual' or 'personal' capacity."(quoting 🚩 *Kentucky, 473 U.S. at 166-67)*).

Defendants' reliance on 🚩 *Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89 (1984)*, is misplaced. *Pennhurst* stands for the proposition that the Eleventh Amendment prohibits federal courts from ordering state officials to conform their conduct to state law. *Id.* at 121 (holding that "a claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment.").

*Pennhurst* bars state claims against state officials in their official capacities. Dawkins claims that his federal constitutional rights were violated by a state employee acting under color of state law in his individual capacity. *Pennhurst* is not applicable. *See* 🚩 *Farid, 850 F.2d at 921* (holding that "the [Supreme Court] has consistently held that the eleventh amendment does not protect state officials from personal liability when their actions violate federal law, even though state law purports to require such actions.").

Dawkins' 🚩 Section 1983 claim against Trooper Irwin in his individual capacity is not barred by the Eleventh Amendment.

### 2. Qualified Immunity

Trooper Irwin also argues that "without a showing of a violation of a clearly established right and affirmative proof of some *ultra vires* conduct ... an individual capacity action cannot be maintained." Def.'s Mem. at 6. Although Irwin makes this statement in support of his Eleventh Amendment argument, it could also be read as a claim of qualified immunity. The doctrine of qualified immunity protects public employees in their individual capacities. *Hafer,* 502 U.S. at 31. Qualified immunity "shields government officials from liability for damages on account of their performance of discretionary official functions insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." 🚩 *Rodriguez v. Phillips,* 66 F.3d 470, 475 (2d Cir 1995)

(citations and internal quotations omitted). The standard governing the use of a qualified immunity defense "has evolved into one of objective reasonableness, designed to 'permit the resolution of many insubstantial claims on summary judgment.'" ⚠️ *Robison v. Via,* 821 F.2d 913, 920 (2d Cir 1987)* (quoting 🚩 *Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)*).

**\*4** However, qualified immunity is an affirmative defense which the individual defendant must plead. The Supreme Court has held that there is "no basis for imposing on the plaintiff an obligation to anticipate such a defense by stating in his complaint that the defendant acted in bad faith." 🚩 *Gomez, 446 U.S. at 640*. Rather, "[i]t is for the official to claim that his conduct was justified by an objectively reasonable belief that it was lawful." *Id.*

Even if I read Trooper Irwin's answer liberally to include a qualified immunity defense, he fails in this motion to establish that "it was objectively reasonable for [him] to believe that his acts did not violate [Dawkins] rights." ⚠️ *Robison, 821 F.2d at 921 (2d Cir. 1987).* [5]

According to Dawkins he was (1) stopped by officer Irwin while driving at a legal rate of speed, (2) asked to produce his drivers license, vehicle registration, thruway toll card and proof of insurance, (3) ticketed for speeding, and (4) advised, but not ticketed, for an expired vehicle registration. Trooper Irwin had possession of the documents for a total of five minutes. After leaving the scene, Dawkins noticed that the speeding ticket misstated the correct time of day and listed his rate of speed at sixty-eight miles per hour as opposed to Trooper Irwin's oral representation that Dawkins was traveling at fifty-eight miles per hour. At trial, Trooper Irwin issued Dawkins a ticket for driving an unregistered vehicle. Found innocent on both charges, Dawkins alleges that Trooper Irwin (1) illegally stopped and detained him based on race and without probable cause, and (2) ticketed him for the unregistered vehicle in retaliation for electing trial. Compl. at II(c).

In his answer and in his memorandum of law in support of his motion for summary judgment, Trooper Irwin fails to provide any evidence concerning his underlying basis for stopping Dawkins. Nor does he offer any justification for ticketing Dawkins for an unregistered vehicle three months after the initial stop. The record before me does not contain an affidavit

**Dawkins v. State, Not Reported in F.Supp. (1996)**

Case 5:22-cv-01188-BKS-ML   Document 10   Filed 03/06/23   Page 20 of 55

or affirmation from Trooper Irwin giving his version of the incident. Moreover, lacking any evidence to the contrary, I accept as true, Dawkins' statement that he was driving at a legal rate of speed, received a second ticket in retaliation for electing trial, and was found innocent of both offenses. [6]

Defendant has done nothing to refute Dawkins' claims. Because Trooper Irwin fails to offer any support concerning the objective reasonableness of stopping Dawkins, ticketing him, and then ticketing him again three months after the initial stop, I deny his motion for summary judgment. [7]

CONCLUSION

For the foregoing reasons I (1) GRANT defendants motion for summary judgment on behalf of defendants State of New York State and the New York State Police Department, (2) GRANT defendant Antone R. Irwin's motion for summary judgement with respect to claims as they relate to acts in his official capacity, (3) GRANT defendant Antone R. Irwin's motion for summary judgment with respect to the Section 1985 claim, and (4) DENY defendant Irwin's motion for summary judgement with respect to claims against him in his personal capacity under Section 1983.

**\*5** IT IS SO ORDERED

**All Citations**

Not Reported in F.Supp., 1996 WL 156764

## Footnotes

1    Defendants contend that Trooper Irwin gave Dawkins the additional ticket at the time of the initial stop. Defs.' Answer at ¶ 2.

2    In his responsive papers, Dawkins requests "declaratory or injunctive relief based on the State of New York policies and statutes of New York Civil Rights Law § 50-a, and Public Office (sic) Law § 89(2)(b) and the use thereof." Pl.'s Mem. at 2. However, attempts to secure prospective relief requiring state officials to comply with state law, as opposed to federal law, is barred by the Eleventh Amendment. *Pennhurst State School and Hosp. v. Halderman,* 465 U.S. 89, 103-106 (1984) Therefore, Dawkins' new claim for prospective relief cannot be sustained and is barred by the Eleventh Amendment.

3    "*Will* itself makes clear that the distinction between official-capacity suits and personal-capacity suits is more than a mere pleading device. State officers sued for damages in their official capacity are not persons for purposes of the suit because they assume the identity of the government that employs them. By contrast, officers sued in their personal capacity come to court as individuals... the Eleventh Amendment does not erect a barrier against suits to impose individual and personal liability on state officials under § 1983." *Hafer v. Melo,* 502 U.S. 21, 27, 31 (1991) (citations and internal quotations omitted).

4    Notwithstanding Dawkins' failure to make clear his intention to state a claim against Trooper Irwin individually, Defendants' memorandum of law acknowledges a cause of action against Trooper Irwin in his individual capacity. Def.'s Mem. at 4.

5    For the purposes of discussing qualified immunity I will read defendants' answer liberally. However, it is not clear from defendants' answer that they have preserved the right to raise a qualified immunity defense. If leave to amend the answer is requested, it might well be granted. *See,* *Satchell v. Dilworth,* 745 F.2d 781, 784 (2d Cir. 1984).

**Dawkins v. State, Not Reported in F.Supp. (1996)**

Case 5:22-cv-01188-BKS-ML   Document 10   Filed 03/06/23   Page 21 of 55

6    In his complaint, Dawkins alleges violations to his Fourth, Sixth, Eighth, and Fourteenth Amendment Rights. Because defendants focus their motion for summary judgment on their affirmative defenses, I do not *sua sponte* consider the merits of Dawkins' claims. However, I note that, "an ordinary traffic stop constitutes a limited seizure within the meaning of the Fourth and Fourteenth Amendments." *U.S. v. Scopo,* 19 F.3d 777, 781 (2d Cir. 1994) (quoting *U.S. v. Hassan El,* 5 F.3d 726, 729 (4th Cir.1993). Accordingly, Trooper Irwin's stop of Dawkins, "must be justified by probable cause or a reasonable suspicion, based on specific and articulable facts, of unlawful conduct." Id. (citations omitted). Probable cause exist when the police reasonably believe that "an offense has been or is being committed." Id. (citing *United States v. Cruz,* 834 F.2d 47, 50 (2d Cir.1987), *cert. denied,* 484 U.S. 1077 (1988). "When an officer observes a traffic offense--however minor--he has probable cause to stop the driver of the vehicle." Id. at 782 (quoting *United States v. Cummins,* 920 F.2d 498, 500 (8th Cir.1990)).

7    In order to prevail on a qualified immunity defense, the defendant must show either (1) "it was not clear at the time of the official acts that the interest asserted by the plaintiff was protected by a federal statute or the Constitution"; (2) "it was not clear at the time of the acts at issue that an exception did not permit those acts"; or (3) "it was objectively reasonable for [Trooper Irwin] to believe that his acts did not violate [Dawkins'] rights. *Robison,* 821 F.2d at 920-21.

---

**End of Document**                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Portillo v. Webb, Not Reported in Fed. Supp. (2017)

Case 5:22-cv-01188-BKS-ML   Document 10   Filed 03/06/23   Page 22 of 55

2017 WL 4570374
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Jamie PORTILLO, Plaintiff,
v.
Jennifer WEBB, Manuel Aldir,
and Lycha Gasanov, Defendants.

16 Civ. 4731 (VEC) (GWG)
|
Signed October 11, 2017

**Attorneys and Law Firms**

Jamie Portillo Coxsackie, NY, pro se.

Agnetha Elizabeth Jacob, New York City Law Department,
New York, NY, for Defendants.

REPORT AND RECOMMENDATION

GABRIEL W. GORENSTEIN, UNITED STATES
MAGISTRATE JUDGE

 **\*1** Plaintiff Jamie Portillo, currently an inmate at the
Coxsackie Correctional Facility in Coxsackie, New York,
brings this lawsuit pro se pursuant to 42 U.S.C. § 1983,
making claims regarding an incident that occurred while he
was being transported from a medical clinic at Rikers Island
to East Elmhurst Hospital. The defendants have moved to
dismiss the complaint for failure to state a claim pursuant
to Federal Rule of Civil Procedure 12(b)(6).[1] For the
reasons stated below, the motion to dismiss should be granted,
with Portillo given leave to file an amended complaint as to
his claim of excessive force.

I. BACKGROUND

For the purpose of deciding the defendants' motion to dismiss,
the Court assumes the allegations in Portillo's complaint are
true and draws all reasonable inferences in his favor. See, e.g.,
Brown Media Corp. v. K & L Gates, LLP, 854 F.3d 150,
156–57 (2d Cir. 2017).

On a motion to dismiss for failure to state a claim, a court's

consideration is limited to the factual
allegations in [the complaint], which
are accepted as true, to documents
attached to the complaint as an exhibit
or incorporated in it by reference, to
matters of which judicial notice may
be taken, or to documents either in
plaintiff['s] possession or of which
plaintiff[ ] had knowledge and relied
on in bringing suit.

Brass v. Am. Film Tech., 987 F.2d 142, 150 (2d Cir.
1993) (citing Cortec Indus., Inc. v. Sum Holding L.P.,
949 F.2d 42, 47–48 (2d Cir. 1991)); accord Halebian v.
Berv, 644 F.3d 122, 130 n.7 (2d Cir. 2011). Furthermore,
in light of Portillo's pro se status, the Court has considered
factual allegations contained in his submissions opposing
the defendants' motion where they amplify claims made
in the complaint. See, e.g., London v. N.Y. State Dep't
of Homeless Servs., 2014 WL 3720401, at \*1 (S.D.N.Y.
July 29, 2014) (considering factual allegations from pro
se plaintiff's opposition submissions when deciding motion
to dismiss); Woods v. Goord, 2002 WL 731691, at \*1
n.2 (S.D.N.Y. Apr. 23, 2002) (considering pro se prisoner's
factual allegations in briefs as supplementing complaint);
Burgess v. Goord, 1999 WL 33458, at \*1 n.1 (S.D.N.Y.
Jan. 26, 1999) ("In general, a court may not look outside
the pleadings when reviewing a Rule 12(b)(6) motion
to dismiss. However, the mandate to read the papers
of pro se litigants generously makes it appropriate to
consider plaintiff's additional materials, such as his opposition
memorandum.") (citations and internal quotation marks
omitted) (quoting Gadson v. Goord, 1997 WL 714878, at
\*1 n.2 (S.D.N.Y. Nov. 17, 1997)).

 **\*2** On October 13, 2015, while detained at the Anna M.
Kross Correctional Facility ("A.M.K.C.") on Rikers Island,
New York, Portillo collapsed in the hallway from "a mild
stroke." Amended Complaint, filed Nov. 28, 2016 (Docket #
17) ("Am. Compl."), at 4; Jamie Portillo Medical Records,
dated Oct. 13, 2015 (attached to Pl. Opp'n) ("Medical
Records"). A doctor who reported to the scene said Portillo
had lost consciousness and had facial numbness, "facial

droop", and weakness in his right leg. Medical Records. Portillo says that, despite explaining to corrections officers that he could not walk, he was forced to walk to the medical clinic at A.M.K.C., which caused him to fall and injure himself. Am. Compl. at 4. Portillo does not explain who was present during this incident, who forced him to walk, or how he was injured.

Portillo was then placed in shackles and handcuffs and taken to East Elmhurst Hospital, escorted by Corrections Officers ("C.O.s") Jennifer Webb, Manuel Aldir, and Lycha Gasanov. Id. Portillo claims that he was again forced to walk, despite repeatedly telling the officers and a doctor at the hospital that he was unable to do so. Id.; Pl. Opp'n at 1. [2] Portillo said that he was dizzy, his vision was blurry, and all he remembered was being dragged by his arms in the hospital. Am. Compl. at 4. He asserts that a doctor and C.O. Webb picked Portillo up by the arms and "let him go," which caused Portillo to fall face-first and injure himself. Id. He alleges the fall caused him to injure his ankles, face, arms, nose, stomach, temple, back, and neck. Pl. Opp'n at 1–2. He alleges that x-rays and other tests were conducted, and that he was given medication for his injuries. Am. Compl. at 5. Portillo later complained that his ankles were "swollen and bruised from being shackled when he was transported to the hospital on October 13," and that "[h]e ha[d] had trouble walking from the ankle injuries since that date." See Email from Agnes Baik, undated (attached to Pl. Opp'n) ("Baik Letter"). He alleges that C.O.s Aldir and Gasanov "did nothing to help [Portillo] or the situation" while he was forced to walk or when he was dropped by C.O. Webb, "they just watched and laughed." Am. Compl. at 4–5.

Construed liberally, Portillo's claims are that (1) C.O. Webb used excessive force against him, based on his fall in the hospital; and (2) C.O.s Gasanov and Aldir either failed to intervene while he was being "forced to walk" by C.O. Webb or were deliberately indifferent to his medical needs.

## II. APPLICABLE LAW

### A. Standard for Motion to Dismiss

A defendant may move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) where the plaintiff "fail[s] to state a claim upon which relief can be granted." To survive such a motion, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal quotation marks

omitted) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). As the Supreme Court noted in Iqbal,

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

Id. (citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a complaint is insufficient under Federal Rule of Civil Procedure 8(a) because it has merely "alleged—but it has not shown—that the pleader is entitled to relief." Id. at 679, 129 S.Ct. 1937 (brackets and internal quotation marks omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

*3 Pro se plaintiff filings are liberally construed, and "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam) (citations and internal quotation marks omitted); accord Littlejohn v. City of New York, 795 F.3d 297, 322 (2d Cir. 2015); see also Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011) (review of pro se complaint for sufficiency requires "special solicitude, interpreting the complaint to raise the strongest claims that it suggests") (citation, brackets, and internal quotation marks omitted). However, even the pleadings of these plaintiffs "must contain factual allegations sufficient to raise a right to relief above the speculative level." Dawkins v. Gonyea, 646 F.Supp.2d 594, 603 (S.D.N.Y. 2009) (internal quotation marks omitted) (quoting Twombly, 550 U.S. at 555, 127 S.Ct. 1955); accord Ford v. Rodriguez, 2016 WL 6776345, at *2 (S.D.N.Y. Nov. 16, 2016).

Case 5:22-cv-01188-BKS-ML   Document 10   Filed 03/06/23   Page 24 of 55

Portillo v. Webb, Not Reported in Fed. Supp. (2017)

**B.** 42 U.S.C. § 1983

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); see 42 U.S.C. § 1983. Section 1983 does not create any federal rights; rather, it provides a mechanism to enforce rights established elsewhere. Gonzaga Univ. v. Doe, 536 U.S. 273, 285, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002); accord Ross v. Woods, 412 Fed.Appx. 392, 393 (2d Cir. 2011) (summary order). Additionally, "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Victory v. Pataki, 814 F.3d 47, 67 (2d Cir. 2016) (internal quotation marks omitted) (quoting Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006)); see also Iqbal, 556 U.S. at 672, 129 S.Ct. 1937 ("In a § 1983 suit .... Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.").

**1. Excessive Force**

"[T]he right of pretrial detainees to be free from excessive force amounting to punishment is protected by the Due Process Clause of the Fourteenth Amendment." United States v. Walsh, 194 F.3d 37, 47 (2d Cir. 1999) (citing Bell v. Wolfish, 441 U.S. 520, 535, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)). [3]   At one time, a pretrial detainee asserting an excessive force claim had to satisfy a subjective and objective element similar to what is required to prove an Eighth Amendment claim. Id. at 47–48. Specifically, a plaintiff had to show that the alleged wrongdoing was "objectively sufficiently serious or harmful enough" to cause a constitutional violation, "contrary to contemporary standards of decency and repugnant to the conscience of mankind," id. at 50 (citations and internal quotation marks omitted), and that the alleged wrongdoer subjectively "had the necessary level of culpability, shown by actions characterized by wantonness in light of the particular

circumstances surrounding the challenged conduct," Sims v. Artuz, 230 F.3d 14, 21 (2d Cir. 2000) (citations and internal quotation marks omitted).

***4**   In Kingsley v. Hendrickson, —— U.S. ——, 135 S.Ct. 2466, 192 L.Ed.2d 416 (2015), however, the Supreme Court held that when force is "purposefully or knowingly" used against a pretrial detainee, the detainee must show only that the force "was objectively unreasonable." Id. at 2473. Kingsley thus altered the test previously used in the Second Circuit for claims arising under the Fourteenth Amendment. See Ross v. Corr. Officers John and Jane Does 1–5, 610 Fed.Appx. 75, 76 n.1 (2d Cir. 2015) (summary order); Vargas v. City of New York, 2017 WL 1214434, at *12 (E.D.N.Y. Mar. 31, 2017); Carmona v. City of New York, 2016 WL 4401179, at *2 (S.D.N.Y. Mar. 1, 2016); see also Darnell v. Pineiro, 849 F.3d 17, 35 (2d Cir. 2017) (recognzing that Kingsley has overruled Second Circuit law in the Fourteenth Amendment "deliberate indifference" context).

Kingsley held that

> objective reasonableness turns on the facts and circumstances of each particular case. A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight. A court must also account for the legitimate interests that stem from the government's need to manage the facility in which the individual is detained, appropriately deferring to policies and practices that in the judgment of jail officials are needed to preserve internal order and discipline and to maintain institutional security.

Kingsley, 135 S.Ct. at 2473 (citations, brackets, and internal quotation marks omitted) (quoting Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443

(1989); and Bell, 441 U.S. at 540, 547, 99 S.Ct. 1861). Factors to consider in judging the objective reasonableness of a use of force include:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

Id.; accord Perez v. Ponte, 236 F.Supp.3d 590, 621 (E.D.N.Y. 2017); Carmona, 2016 WL 4401179, at *2.

## 2. Failure to Intervene

"It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." Terebesi v. Torreso, 764 F.3d 217, 243 (2d Cir. 2014) (internal quotation marks omitted) (quoting Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994)). As such, an officer who fails to intervene where he or she observes or has reason to know that excessive force is being used or a constitutional violation has been committed by a fellow officer is liable for the preventable harm caused by that officer. Anderson, 17 F.3d at 557; accord Porter v. Goord, 467 Fed.Appx. 21, 23 (2d Cir. 2012) (summary order); Baines v. City of New York, 2017 WL 3425746, at *2 (S.D.N.Y. Aug. 9, 2017). Although liability may attach only where there was "a realistic opportunity to intervene to prevent the harm from occurring," Anderson, 17 F.3d at 557, "[w]hether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise," id.; accord Terebesi, 764 F.3d at 243–44; Stephens v. Venettozzi, 2016 WL 929268,

at *11 (S.D.N.Y. Feb. 24, 2016); Bowen v. Patrick, 2012 WL 3743409, at *7 (S.D.N.Y. Aug. 29, 2012).

## 3. Deliberate Indifference

**\*5** A prisoner may make a constitutional claim arising out of medical treatment where he or she can show "deliberate indifference" to his or her medical needs.

> [D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed in the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.

Estelle v. Gamble, 429 U.S. 97, 104–05, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (citations, footnotes, and internal quotation marks omitted); accord Spavone v. N.Y. State Dep't of Corr. Servs., 719 F.3d 127, 138 (2d Cir. 2013).

A pretrial detainee enjoys similar protections under the Due Process Clause of the 14th Amendment. See Darnell, 849 F.3d at 29. To establish that a prison official was deliberately indifferent toward an inmate's health, a pretrial detainee must satisfy two prongs: (1) "an 'objective prong' showing that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process"; and (2) "a 'subjective prong'—perhaps better classified as a 'mens rea prong' or 'mental element prong'—showing that the officer acted with at least deliberate indifference to the challenged conditions." Id.

Under the objective prong, the alleged medical need must be "sufficiently serious." Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994) (citation and internal quotation marks omitted). A "sufficiently serious" medical need is "a condition of urgency, one that may produce death,

degeneration, or extreme pain." See id. (citation and internal quotation marks omitted). "Factors that have been considered include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (citations, brackets, and internal quotation marks omitted).

As with claims of excessive use of force, the Supreme Court's decision in Kingsley altered the subjective prong where a claim is made by a pretrial detainee. See Darnell, 849 F.3d at 34–35 ("Following the Supreme Court's analysis in Kingsley, there is no basis for the reasoning ... that the subjective intent requirement for deliberate indifference claims under the Eighth Amendment ... must apply to deliberate indifference claims under the Fourteenth Amendment."). Now,

> to establish a claim for deliberate indifference to conditions of confinement under the Due Process Clause of the Fourteenth Amendment, the pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety. In other words, the "subjective prong" (or "mens rea prong") of a deliberate indifference claim is defined objectively.

**\*6** Id. at 35; accord Brown v. City of New York, 2017 WL 1390678, at \*11 (S.D.N.Y. Apr. 17, 2017). As was previously true, there is no liability for "negligently inflicted harm." Kingsley, 135 S.Ct. at 2472 (emphasis and internal

quotation marks omitted) (quoting Cty. of Sacramento v. Lewis, 523 U.S. 833, 849, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)); accord Darnell, 849 F.3d at 36.

## III. DISCUSSION

Portillo's description of the circumstances in which he fell is vague and not entirely consistent. In his amended complaint he states that he was in shackles and handcuffs when he reached the hospital, and that after he explained to C.O. Webb and a doctor at the hospital that he could not walk, "they picked me up, let me go and I immediately fell causing me to injure myself" and that at this time he was being "dragged" by his arms. Am. Compl. at 4. In his opposition to defendants' motion he claims that the officers escorting him "forcefully took plaintiff against his will by the arms while shackled by the hands and feet, and 'forced him to walk', to wit, then plaintiff fell face forward." Pl. Opp'n at 1.

The circumstances under which Portillo fell to the floor are critical to determining whether he has stated an excessive force claim. At the time he was being transported, Portillo had a "minor stroke." See Am. Compl. at 4. The external symptoms of the stroke and the officers' knowledge of the diagnosis are not clear from the complaint, however. Thus it is not clear that "forcing [Portillo] to walk" would cause him any serious harm. Cf. Jones v. Westchester Cty., 182 F.Supp.3d 134, 141, 151 (S.D.N.Y. 2016) (excessive force claim stated where plaintiff had suffered injury to knee, hip, and lower back from fall and corrections officers forced him to walk though they knew he was in severe pain). Without the officers' having knowledge that being forced to walk could cause serious harm, the mere act of "forcing" plaintiff to walk could not support a claim of excessive force. See, e.g., D'Attore v. City of New York, 2013 WL 1180395, at \*6 (S.D.N.Y. Mar. 15, 2013) (no excessive force claim where officer transported wheelchair-bound inmate down hallway in reckless and violent manner), appeal dismissed, No. 15–1722 (2d Cir. Jul. 28, 2015); Prescott v Riker Island Med. Staf., 2011 WL 1435218, at \*6 (S.D.N.Y. Apr. 12, 2011) (motion to dismiss granted where plaintiff "at most" showed shoves, pushes, and shackling during transport from hospital to Rikers "may have caused some aggravation to [plaintiff's] pre-existing injuries").

Of more significance are the circumstances under which C.O. Webb and the doctor were responsible for Portillo

Case 5:22-cv-01188-BKS-ML   Document 10   Filed 03/06/23   Page 27 of 55

Portillo v. Webb, Not Reported in Fed. Supp. (2017)

falling to the ground. Portillo's allegations, however, do not show that C.O. Webb and the doctor deliberately or even recklessly dropped Portillo to the floor. See, e.g., Jones, 182 F.Supp.3d at 152; Goodwin v. Nat'l R.R. Passenger Corp., 2014 WL 795756, at *2, *9 (E.D.N.Y. Feb. 27, 2014); Pooler v. Hempstead Police Dep't, 897 F.Supp.2d 12, 26 (E.D.N.Y. 2012). Portillo's descriptions of the incident say only that he was "let ... go" or that because he was forced to walk, "to wit, then plaintiff fell face forward." Am. Compl. at 4. Pl. Opp'n at 1. To be sure, Portillo's allegations that the fall caused "injuries to his head," neck, face, arm, and leg distinguish Portillo's claim from cases in which no discernible physical injury resulted from the use of force. Cf. Arnold v. Westchester Cty., 2012 WL 336129, at *7 (S.D.N.Y. Feb. 3, 2012) ("forced fall" allegedly caused by officers making shackled pretrial detainee walk quickly down hallway not constitutional violation where inmate did not claim the fall caused him any notable physical injury). Portillo, however, gives no explanation of the nature of his injuries. See Am. Compl. at 4.

**\*7** In light of these deficiencies, the Court cannot conclude that the complaint shows that C.O. Webb used excessive force.

It is clear, however, that Portillo has not stated a failure to intervene claim against C.O.s Aldir and Gasanov. Even if Portillo's pleading showed that the fall to the ground was the result of excessive force—a prerequisite to a failure to intervene claim, see, e.g., Walker v. City of New York, 2014 WL 12652545, at *12 (E.D.N.Y. Sept. 3, 2014) ("To prevail on a failure to intervene claim a plaintiff must demonstrate the existence of an underlying constitutional violation in which the defendant officer failed to intervene.") (collecting cases), aff'd, 638 Fed.Appx. 29 (2d Cir. 2016)—the allegations do not suggest that C.O.s Aldir and Gasanov had "a realistic opportunity to intervene to prevent the harm from occurring," Anderson, 17 F.3d at 557. In the absence of such an opportunity, they cannot be liable for any failure to intervene.

To the extent that Portillo intended to raise a claim that C.O.s Webb, Aldir, or Gasanov were deliberately indifferent to his medical needs, such a claim must also be dismissed. Portillo concedes that the officers were taking him to a hospital to receive treatment for his stroke. See generally Am. Compl. at 4. It may be that Portillo intended to claim that defendants failed to offer him "adequate medical attention" for his inability to walk. See Pl. Opp'n at 2. Assuming arguendo

that the temporary inability to walk is a sufficiently serious medical condition, Portillo's pleadings do not allege facts from which a reasonable person could believe defendants knew or should have known that a "substantial risk of serious harm" existed simply because they required Portillo to walk to a hospital bed after a mild stroke. To the extent Portillo claims defendants should have provided him with a wheelchair, see Pl. Opp'n at 2, this is best characterized as a disagreement as to the method of addressing his inability to walk, and thus not grounds for a section 1983 claim. See Chance, 143 F.3d at 703 ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim."); accord Washington v. Artus, 708 Fed.Appx. 705, 709, 2017 WL 3911573, at *2 (2d Cir. Sept. 7, 2017). To the extent defendants were negligent, no Eighth or Fourteenth Amendment claim can arise from such negligence. See Farmer v. Brennan, 511 U.S. 825, 835–36, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); accord Darnell, 849 F.3d at 36.

Notwithstanding the defects in the complaint, the Second Circuit has stated that courts should not dismiss pro se complaints "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (citations and internal quotation marks omitted); accord Pearson v. Reid–Robinson, 632 Fed.Appx. 19, 19 (2d Cir. 2016) (summary order); see also Milanese v. Rust–Oleum Corp., 244 F.3d 104, 110 (2d Cir. 2001) (leave to file amended complaint should not be denied absent evidence of undue delay, bad faith, undue prejudice to non-movant, or futility) (citing Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)). Although Portillo has amended his complaint once, he did so at a time when he was unaware of the potential defects in his claims. While the Court sees no cure that can be made to the failure-to-intervene and deliberate indifference claims, it is possible that the excessive force claim could withstand a motion to dismiss if pled with appropriate facts.

IV. CONCLUSION

**\*8** For the reasons stated above, defendant's motion to dismiss (Docket # 23) should be granted. Portillo should be permitted 21 days to file a second amended complaint in the event he believes that he can cure the defects in his excessive force claim.

Portillo v. Webb, Not Reported in Fed. Supp. (2017)

Case 5:22-cv-01188-BKS-ML   Document 10   Filed 03/06/23   Page 28 of 55

The Court notes also that a record attached by plaintiff to his motion papers states that he is a "monolingual Spanish Speaker." Baik Letter. Any amended filing must contain a clear explanation that the new amended complaint was composed by Portillo and that it has been accurately translated.

### PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file any objections. See also Fed. R. Civ. P. 6(a), (b), (d). A party may respond to any objections within 14 days after being served. Any objections and responses shall be filed with the Clerk of the Court, with copies sent to the Hon. Valerie E. Caproni at 40 Foley Square, New York, New York 10007. Any request for an extension of time to file objections or responses must be directed to Judge Caproni. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).

**All Citations**

Not Reported in Fed. Supp., 2017 WL 4570374

### Footnotes

1    See Notice of Motion, filed Mar. 3, 2017 (Docket # 23); Defendants' Memorandum of Law in Support of Their Motion to Dismiss the Amended Complaint, filed Mar. 3, 2017 (Docket # 24); Plaintiff Opposition to Defendant's Motion [to] Dismiss Action, filed May 11, 2017 (Docket # 29) ("Pl. Opp'n"); Defendants' Reply Memorandum of Law in Further Support of Their Motion to Dismiss the Amended Complaint, filed June 1, 2017 (Docket # 32) ("Defs. Reply").

2    Portillo's motion papers do not specify which of the officers "forced him to walk." Pl. Opp'n at 1, 4.

3    We assume that Portillo was a pretrial detainee and not a convicted prisoner on the date of the incident, October 13, 2015, because he made no assertion that he was "convicted" in his original complaint but did make such an assertion when he filed his amended complaint on November 18, 2016. Am. Compl. at 2, 6. Defendants additionally do not appear to oppose this assumption. See Defs. Reply at 4 n.1 (acknowledging that "[i]t is unclear ... whether Plaintiff was a pretrial detainee" when the incident occurred).

**End of Document**    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Portillo v. Webb, Not Reported in Fed. Supp. (2018)

Case 5:22-cv-01188-BKS-ML   Document 10   Filed 03/06/23   Page 29 of 55

2018 WL 481889
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Jamie PORTILLO, Plaintiff,

v.

Jennifer WEBB, Manuel Aldir,
and Lycha Gasanov, Defendants.

16-CV-4731 (VEC)(GWG)
|
Signed 01/17/2018

**Attorneys and Law Firms**

Jamie Portillo, Coxsackie, NY, pro se.

Agnetha Elizabeth Jacob, New York City Law Department, New York, NY, for Defendants.

ORDER ADOPTING REPORT & RECOMMENDATION

VALERIE CAPRONI, United States District Judge

**\*1** Plaintiff Jamie Portillo, proceeding *pro se*, alleges that excessive force was used against him while he was incarcerated at the Anna M. Kross facility on Rikers Island in October 2015. Am. Compl. (Dkt. 17) at 4. Plaintiff alleges that he suffered a "minor stroke" on October 13, 2015. Am. Compl. at 4. The Defendants, corrections officers at the Kross facility, responded to Plaintiff and escorted him to the Kross medical clinic and then to the East Elmhurst Hospital. Am. Compl. at 4. Plaintiff alleges that defendant Webb twice forced him to stand and attempt to walk, causing him to fall and injure himself. Am. Compl. at 4. Seeking redress for injuries sustained in his falls, Plaintiff alleges claims for excessive force against Webb and failure to intervene against defendants Aldir and Gasanov.

The Defendants moved to dismiss on the grounds that Portillo's amended complaint does not plausibly allege that excessive force was used by Webb or that the other defendants had a duty to intervene and failed to do so. Dkts. 23, 24. The Court referred this case to Magistrate Judge Gorenstein for general pretrial and for preparation of a report and recommendation on any dispositive motions. Dkt. 10; *see also* Dkt. 27 (amended order of referral). The Defendants filed their motion to dismiss on March 3, 2017. Dkts. 23,

24. Portillo opposed the motion on May 11, 2017. Dkt. 29. Defendants replied on June 1, 2017. Dkt. 32.

On October 12, 2017, Magistrate Judge Gorenstein issued a report and recommendation (the "R&R"). Dkt. 34. Judge Gorenstein concluded that the Amended Complaint did not sufficiently allege facts from which the Court could infer that it was objectively unreasonable for defendant Webb to force Portillo to stand and walk. R&R at 10-11. Judge Gorenstein also found that the Amended Complaint did not allege that defendants Aldir and Gasanov had a realistic opportunity to intervene and prevent excessive force from being used. R&R at 12. Judge Gorenstein recommended that the Court grant Portillo leave to amend. R&R at 12-13. In lieu of filing objections to the R&R, Plaintiff filed a second amended complaint. [1] Dkt. 37.

DISCUSSION

In reviewing a report and recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b) (1)(C). When no objections are made to a magistrate judge's report, a district court may adopt the report so long as "there is no clear error on the face of the record." *Phillips v. Reed Grp., Ltd.*, 955 F. Supp. 2d 201, 211 (S.D.N.Y. 2013) (citing *Nelson v. Smith*, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985)). Failure to file timely objections to the magistrate judge's report constitutes a waiver of those objections in the district court and on later appeal to the United States Court of Appeals. *See* *Small v. Sec'y of Health & Human Servs.*, 892 F. 2d 15, 16 (2d Cir. 1989) (*per curiam*); *see also* *Thomas v. Arn*, 474 U.S. 140, 149–50 (1985) (holding that Section 636 does not require review of a magistrate's findings if no party objects).

**\*2** Because no objections to the R&R were filed, the Court reviews for "clear error." *Phillips*, 955 F. Supp. 2d at 211. Upon careful review, the Court finds no clear error in Magistrate Judge Gorenstein's well-reasoned decision. Accordingly, the Court adopts the R&R in full.

CONCLUSION

**Portillo v. Webb, Not Reported in Fed. Supp. (2018)**

Case 5:22-cv-01188-BKS-ML   Document 10   Filed 03/06/23   Page 30 of 55

Defendants' motion to dismiss is GRANTED and Plaintiff is given leave to file a second amended complaint. As noted above, Plaintiff has already filed a second amended complaint. The Court will issue a new referral to Magistrate Judge Gorenstein relative to Plaintiff's second amended complaint.

The Clerk of Court is respectfully requested to close the open motion at docket entry 23. The Clerk of Court is further requested to mail a copy of this Order and the R&R to Plaintiff and to note mailing on the docket.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purposes of an appeal. *Cf.* *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that appellant demonstrates good faith when seeking review of a non-frivolous issue).

**SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2018 WL 481889

---

### Footnotes

1    On November 13, 2017, in response to Plaintiff's request for more time to object to the R&R, the Court extended until November 27, 2017, Plaintiff's deadline to file objections. Dkt. 36. Because Plaintiff's amended complaint had not yet been dismissed, the Court did not set a deadline for Plaintiff to file a second amended complaint. Nonetheless, Plaintiff filed his second amended complaint on November 28, 2017, and did not file any objections to the R&R.

---

End of Document                                   © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 2954370
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

James JACKSON, Plaintiff,

v.

COUNTY OF ULSTER; Joshua Caliendo, Defendants.

1:22-cv-148 (TJM/ATB)
|
Signed July 26, 2022

**Attorneys and Law Firms**

Christopher D. Watkins, Watkins Law, New Paltz, NY, for Plaintiff.

Adam T. Mandell, Maynard, O'Connor Law Firm—Saugerties Office, Saugerties, NY, for Defendants.

**DECISION and ORDER**

THOMAS J. McAVOY, Senior United States District Judge

**I. INTRODUCTION**

**\*1** This civil rights action is brought under 42 U.S.C. § 1983 and New York State common law. *See generally* First Amended Complaint ("FAC"), Dkt. 10. Plaintiff James Jackson asserts claims of Fourth Amendment excessive force and state common law assault and battery. *See id.* The claims are based on allegations that a police officer's K-9 twice bit Plaintiff while he was restrained and not offering any resistance or threat to the police. *See id.* Defendants County of Ulster and Joshua Caliendo move pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the FAC in its entirety. Dkt. 11. Plaintiff opposes the motion, Dkt. 13, and Defendants file a reply. Dkt. 16. The Court heard oral arguments on the motion on July 13, 2022, at which time the Court reserved decision. For the reasons that follow, the motion is denied.

**II. STANDARD OF REVIEW**

In addressing a motion pursuant to Rule 12 (b)(6), the Court must accept as true the factual allegations in the FAC and draw all reasonable inferences in Plaintiff's favor. *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009). To survive the motion, the FAC must plead enough facts to state a claim to relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is facially plausible when the factual content pleaded allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

**III. BACKGROUND**

The following facts are taken from the FAC and are deemed to be true for purposes of this motion.

During the early morning hours of July 18, 2021 in New Paltz, New York, Plaintiff was looking for his friend who was going to drive him home to Middletown, New York. FAC ¶ 7. While he was searching for his friend in the vicinity of Chase Bank, Plaintiff was physically accosted by two strangers, who apparently mistook him for someone else. *Id.* ¶ 8. Plaintiff was punched and taken to the ground. *Id.* While he was on the ground, Plaintiff was pepper-sprayed by a Town of New Paltz police officer. *Id.* ¶ 9.

While he was temporarily blinded, Plaintiff was detained by police officers, including Defendant Caliendo, an Ulster County Sheriff's Deputy. *Id.* ¶ 10. Plaintiff was then searched, handcuffed behind his back, and walked toward a patrol car by two police officers. *Id.* ¶ 11. Plaintiff was not violent and did not threaten any violence, nor was he carrying a weapon of any sort. *Id.* ¶¶ 12, 13.

While Plaintiff was still handcuffed behind his back and being walked to a patrol car by two officers, a police K-9 handled by Deputy Caliendo bit Plaintiff on his right leg, causing him to fall to the ground. *Id.* ¶ 14. While Plaintiff was still handcuffed with his hands behind his back and lying face down on the ground, Deputy Caliendo's K-9 bit Plaintiff's right leg again and held the bite, causing Plaintiff to suffer excruciating pain. *Id.* ¶ 15. At no time after he was detained and before he was bit by the police K-9 did Plaintiff pose any threat to any police officer or anyone else. *Id.* ¶¶ 16, 17. The police dog's bites "took a chunk of flesh out of Plaintiff's right leg." *Id.* ¶ 19. He later received eleven stitches to his leg; the bites have left scarring and impaired Plaintiff's ability to walk, run, and play with his young child. *Id.* ¶¶ 20, 21.

**\*2** The FAC asserts as "Causes of Action":

24. By subjecting Plaintiff to unreasonable force, Defendant Caliendo violated Plaintiff's rights under the Fourth Amendment to the United States Constitution, as made actionable by 🚩 42 U.S.C. § 1983.

25. By subjecting Plaintiff to a K-9 attack without justification, Defendant Caliendo committed a battery against Plaintiff.

26. By subjecting Plaintiff to a K-9 attack without justification and failing to secure the police dog for which he was responsible, Defendant Caliendo committed an assault against Plaintiff, as he caused Plaintiff to reasonably fear a harmful touching.

27. Defendant County of Ulster has *respondeat superior* liability for the assault and battery suffered by Plaintiff when he was bitten twice by the UCSO police K-9 without justification and made to reasonably fear a harmful touching.

FAC ¶¶ 24-27.

The FAC seeks an award of compensatory damages, "jointly and severally, against the Defendants;" an award of punitive damages against Defendant Caliendo; and an award of "reasonable attorneys fees' and costs as permitted by 🚩 42 U.S.C. § 1988."

## IV. DISCUSSION

### 1. Fourth Amendment Excessive Force Claim Against Deputy Caliendo

Defendants argues that Plaintiff has not sufficiently pled a Fourth Amendment excessive force claim against Deputy Caliendo, and that in any event he is entitled to qualified immunity as a matter of law. Plaintiff opposes these arguments.

### Fourth Amendment Excessive Force Standard

Every person has a Fourth Amendment right to be free from excessive force by police officers, including during the course of an arrest. 🚩 *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). To succeed on a Fourth Amendment claim, a plaintiff must demonstrate that the actions of the defendant officer were

not " 'objectively reasonable' in light of the facts and circumstances as presented to [the officer] at the time of the plaintiffs arrest." *Id. at 397, 109 S.Ct. 1865*. Whether an officer's actions were reasonable depends on a fact-intensive inquiry which takes account of "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." 🚩 *Id. at 396-97, 109 S.Ct. 1865*.

### Defendants' Position - Excessive Force

Defendants argue that "Deputy Caliendo was acting pursuant to his official duties as a police officer, and under color of state law when he responded to the scene of a physically violent altercation in which Plaintiff was involved." Def. Mem. L. at 5. Defendants interpret Plaintiff's allegations as being that "Deputy Caliendo subjected Plaintiff to unreasonable force, by way of a police K-9 biting him without justification, simply because the police K-9 was Deputy Caliendo's responsibility." 🚩 *Id.* (citing FAC ¶¶ 14-18, 24). Defendants assert that Plaintiff's claims "are based solely on allegations of intentional conduct by Deputy Caliendo, while at the same time, the Amended Complaint fails to specify any intentional conduct or misconduct on his part, including failing to plead that Deputy Caliendo made any overt act in directing the police K-9 to act." *Id.* at 5-6. Defendants cite case law standing for the proposition that "absent police misconduct, the instinctive acts of trained canines ... [do] not violate the Fourth Amendment." *United States v. Iverson*, 166 F. Supp.3d 350, 359 (W.D.N.Y. 2016), *aff'd*, 897 F.3d 450 (2d Cir. 2018)(citing 🚩 *United States v. Reed*, 141 F.3d 644, 650 (6th Cir. 1998)).

**\*3** Defendants also cite case authority for the proposition that "except for 🚩 § 1983's requirement that the tort be committed under color of state law, the essential elements of excessive force and state law assault and battery claims are substantially identical." *Warr v. Liberatore*, 270 F.Supp.3d 637, 653 (W.D.N.Y. 2017) (citing *Humphrey v. Landers*, 344 Fed. Appx. 686, 688 (2d Cir. 2009)(quotation marks and alterations omitted); also citing *Benson v. Yaeger*, No. 05-CV-784S, 2009 WL 1584324, at 4 n.6 (W.D.N.Y. 2009) ("The test for whether a plaintiff can maintain a New York State law assault and battery cause of action against

law enforcement officials is the exact same test as the one used to analyze a Fourth Amendment excessive force claim....")). From this Defendants argue that "[t]here exists no precedent in New York State to support a cause of action against law enforcement officials for common-law assault and battery based on the police K-9 biting an individual."

Def. Mem. L. at 6 (citing 🔖 *Ellington v. County of Monroe*, 15-CV-6310-FPG, 2018 WL 6605662, at 3, 2018 U.S. Dist LEXIS 212000 (W.D.N.Y. 2018)). Thus, Defendants assert, "it follows that a Fourth Amendment excessive force claim, founded on identical facts and circumstances as the assault and battery claim, cannot be sustained." *Id.* Defendants argue that even when accepting Plaintiff's allegations as true, his "claims contradict, are fundamentally at odds with, and are unsupported by his factual allegations." *Id.* Further, Defendants argue that the FAC "fails to provide any non-conclusory allegations or facts supporting the existence or inference that ... Deputy Caliendo's actions lead to the deprivation of Plaintiff's civil rights. The Complaint is implausible on its face, and Plaintiff's 🔖 § 1983 claim against Deputy Caliendo should be dismissed for failure to state a claim." *Id.* at 6-7.

**Plaintiff's Position - Excessive Force**

Plaintiff asserts that courts within this Circuit, including in the Northern District, have long recognized that a police officer's use of significant force on a detained and subdued suspect violates the Fourth Amendment's proscription against unreasonable, or excessive, force. *See Bradley v. Rell*, 703 F. Supp. 2d 109, 121 (N.D.N.Y. 2010) ("Furthermore, the Court finds that a reasonable officer would have known that continuing to assault a handcuffed and subdued arrestee, and/or releasing a police dog on a handcuffed, immobilized arrestee violated" the Fourth Amendment); 🔖 *Lewis v. City of Albany Police Dep't*, 547 F. Supp. 2d 191, 206 (N.D.N.Y 2008) ("Put simply, no police officer could reasonably believe that stepping on the head of an already-handcuffed, prone suspect and grinding his face into the pavement would not violate the suspect's right to be free from excessive force, regardless of the other surrounding circumstances."); *Jennings v. DOJ Serv.*, No. 02-CV-1405 (LEK/RFT), 2008 U.S. Dist. LEXIS 61763, at *21, (N.D.N. Y Mar. 26, 2008) ("Given Plaintiff's contention that he was assaulted while shackled and handcuffed, his allegations describe an excessive use of force contrary to contemporary

standards of decency.") (citing 🔖 *Blyden v. Mancusi*, 186 F.3d 252, 263 (2d Cir. 1999)); *Amato v. City of Saratoga Springs*, No. 95-CV-1510 (TJM), 1997 WL 727531, at *1, 1997 U.S. Dist. LEXIS 16660, at *3 (N.D.N. Y Oct. 4, 1997)("First, Flanagan's use of excessive force while Plaintiff was handcuffed to a desk is plainly reprehensible and tortious conduct.").

Plaintiff points out that the courts in this Circuit have also found that the use of a police K-9 to bite, or to bite and hold, a suspect "constitutes, at a minimum, a significant degree of force." 🔖 *Whitfield v. City of Newburgh*, No. 08 CV 8516 (RKE), 2015 WL 9275695 at *——, 2015 U.S. Dist. LEXIS 169667 at *28 (S.D.N.Y. Dec. 17, 2015). Plaintiff contends that, as the 🔖 *Whitfield* court noted, injury is almost inevitable when a police K-9 is used. *See id.* at *30. [1]

Plaintiff argues that "according to the complaint's factual allegations, at the time that he was viciously bit and attacked by the police K-9 under Deputy Caliendo's control, Plaintiff was handcuffed with his hands behind his back and was not resisting arrest or otherwise posing any threat to anyone, including Caliendo or the other officers by his side. This is the essence of excessive force." Pl. Mem. L. at 4.

**\*4** Plaintiff also argues that the case on which Deputy Caliendo relies, 🔖 *Ellington v. County of Monroe*, does not support Defendants' argument related to the Fourth Amendment claim. There, the court stated that the plaintiff had provided no support in his opposition to the defendants' motion to dismiss the assault and battery claim based upon a K-9 bite, and that the court could "find no law supporting a claim for assault and battery against a police officer or his canine based on the latter biting a suspect." 🔖 *Ellington*, 2018 WL 6605662, at *3. However, Plaintiff notes, the court denied the defendant K-9 officer's summary judgment motion as to excessive force based on the police dog biting plaintiff after he had allegedly surrendered. 🔖 *Id.* Plaintiff notes that the court also denied qualified immunity, finding: "Here, no reasonable police officer could have determined that releasing Mic to bite Ellington, who had surrendered by laying on the ground, was lawful." 🔖 *Id.* at *4.

**Defendants' Reply - Excessive Force**

In their reply, Defendants cite to *Fischetti v. City of New York*, 199 A.D.3d 891, 158 N.Y.S.3d 163, 165-66 (2d Dept. 2021), for the proposition that under New York state law intentional contact made during the course of a lawful arrest does not constitute a civil assault and battery provided the force used by the defendant police officer was reasonable. As Defendants indicate, the New York State Supreme Court, Appellate Division Second Department in *Fischetti* stated that "[c]laims that law enforcement personnel used excessive force in the course of an arrest are analyzed under the Fourth Amendment and its standard of objective reasonableness." *Id.* at 166 (citations omitted). In *Fischetti*, the Second Department found that the trial court had properly granted summary judgment to the defendants because the defendants had established their prima facie entitlement to judgment by demonstrating that the arrest of the plaintiff was lawful, that the use of handcuffs during her arrest was not objectively unreasonable, and the plaintiff had failed to raise a triable issue of fact on these issues. *Id.* Here, Defendants argue that "the plaintiff has failed to allege, within the four corners of his Amended Complaint, that the arrest was unlawful. As such, Defendants contend that the only remaining question in the civil personal injury action before this Court is whether the officer's conduct was reasonable, which is analyzed in the context of the Fourth Amendment." Reply, at 7.

Defendants also argue that "the plaintiff's claims that the defendant, Joshua Caliendo, was acting 'within the scope of his employment' at all times, and that Deputy Officer Caliendo acted 'maliciously', are opposite and contradictory, such that plaintiff cannot assert both in the same Amended Complaint." Reply at 7 (citing FAC at ¶¶ 3, 22 [2] ). Defendants further argue: "Plaintiff's allegation that the Defendant, Joshua Caliendo, was motivated by malice during the dog bite, directly undermines and contradicts the allegation that the dog bite occurred while the defendant was acting within the scope of his employment, such that they cannot coexist." *Id.* at 7-8 (citing *Kruger v. EMFT, LLC*, 87 A.D.3d 717, 718, 930 N.Y.S.2d 11, 13 (2d Dept. 2011); [3] *Fernandez v. Rustic Inn, Inc.*, 60 A.D.3d 893, 896, 876 N.Y.S.2d 99, 102 (2d Dept. 2009) [4] ).

### Analysis - Excessive Force

**\*5** The Court turns first to the claim that Deputy Caliendo violated Plaintiff's Fourth Amendment rights by subjecting him to unreasonable force when Deputy Caliendo's police K-9

twice bit Plaintiff. Plaintiff alleges that he was handcuffed behind his back and not offering any resistance or threat to the police or anyone else when he was bit by the K-9. As indicated in 🚩 *Graham*, 490 U.S. at 395, 109 S.Ct. 1865, every person has a Fourth Amendment right to be free from excessive force by police officers, including during the course of an arrest. To succeed on a Fourth Amendment claim, a plaintiff must demonstrate that the actions of the defendant officer were not objectively reasonable in light of the facts and circumstances presented to the officer at the time of Plaintiff's arrest. 🚩 *Id.,* at 397, 109 S.Ct. 1865. Whether an officer's actions were reasonable depends on a fact-intensive inquiry which takes account of the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. 🚩 *Id.*, at 396-97, 109 S.Ct. 1865.

As Plaintiff points out, the courts within this Circuit, including in the Northern District, have long recognized that a police officer's use of significant force on a detained and subdued suspect violates the Fourth Amendment's proscription against unreasonable force. This holds true whether or not the arrest was lawful. Further, courts have also found that the use of a police K-9 to bite, or to bite and hold, a suspect can constitute a significant degree of force.

When accepting the allegations in the FAC as true and drawing all reasonable inferences in Plaintiff's favor, Plaintiff has stated sufficient allegations for his Fourth Amendment claim against Deputy Caliendo to survive the instant motion. The FAC alleges that the K-9 handled by Deputy Caliendo bit Plaintiff while Plaintiff was handcuffed behind his back and offering no resistance or threat. The FAC also alleges that, with regard to Plaintiff's state law causes of action, Deputy Caliendo subjected Plaintiff to a K-9 attack without justification, and that he failed to secure the police dog for which he was responsible. From these allegations, it can reasonably be inferred that Deputy Caliendo intentionally allowed the K-9 to bite Plaintiff either by directing the canine to do so, or by failing to restrain the K-9 when it exhibited aggressive conduct towards Plaintiff. While it might ultimately be established that Deputy Caliendo was acting reasonably to control a disruptive situation; that the K-9's bites were merely the instinctive acts of a trained canine; or that Deputy Caliendo acted solely for personal reasons unrelated to the furtherance of his employer's business, these

conclusions are not evidenced by the allegations in the FAC. Accepting that the K-9 twice bit Plaintiff, that Plaintiff offered no resistance or danger to the officers or others, that the second bite occurred while Plaintiff was face down on the ground while handcuffed behind his back, and that the bite to Plaintiff's right leg was significant enough to require 11 stitches and has since caused Plaintiff difficulties in walking and running, the FAC alleges facts supporting a plausible Fourth Amendment claim against Deputy Caliendo.

### Defendants' Position - Qualified Immunity

Defendants argue that Deputy Caliendo "is immune from suit under the doctrine of qualified immunity[ ] because the circumstances as they existed at the time of Plaintiff's arrest on July 18, 2021 renders the force applied by the K-9 dog handled by Deputy Caliendo neither excessive nor unreasonable." Def. Mem. L. at 7. In this regard Defendants assert:

> [I]t is clear that Deputy Caliendo conducted himself and the K-9 dog properly and did not use excessive force while he was assisting in the arrest of the Plaintiff. Due to the physically violent altercation in which Plaintiff was involved, numerous police officers from the Town of New Paltz, including UCSO Deputy Caliendo, were called to the scene to de-escalate and neutralize the situation, and the inference must be made that the detention and restraining of the Plaintiff was required in order to do so. In considering a claim that a police officer used excessive force in the course of effecting an arrest, it is important to make allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation, and that unless "no officer of reasonable competence *could have* made the same choice in similar circumstances," Deputy Caliendo should be granted qualified immunity. *LaFever v. Clarke*, 525 F. Supp.3d 305 (N.D.N.Y. 2021); *Lennon v. Miller*, 66 F.3d 416,420 (2d Cir. 1995)(emphasis added); *see also Myers v. Patterson*, 819 F.3d 625 at 633 (2d Cir. 2016).

**\*6** Def. Mem. L. at 8.

Defendants argue that "in consideration of Deputy Caliendo's assessment of the nature and severity of the situation, any perceived threat to the safety of the officers or others at the scene, and the Plaintiff's conduct as the officers were effectuating arrest, deference should be given to Deputy Caliendo's professional judgment formed in the moments leading up his decision to utilize the police K-9 under his command, and the reasonableness of that judgment should be inferred." *Id.* at 8-9 (citing *Graham*, 490 U.S. at 396-97, 109 S.Ct. 1865).

### Plaintiff's Position - Qualified Immunity

Plaintiff argues that Deputy Caliendo is not entitled to qualified immunity because, as of July 2021, it had been well established for over twenty years that a police officer cannot use significant force, including a police K-9, on a handcuffed and otherwise subdued detainee without violating the Fourth Amendment. *See, e.g.,* *Whitfield*, 2015 WL 9275695, at \*10, 2015 U.S. Dist. LEXIS 169667, at \*28 ("First, it was clearly established law in the Second Circuit as of April 2000 that it was a Fourth Amendment violation to use 'significant' force against arrestees who no longer actively resisted arrest or posed a threat to officer safety," and "the use of a police dog constitutes, at a minimum, a significant degree of force."); *Walsh v. City of Kingston*, No. 08-CV-00611 (TJM), 2010 WL 681315, at \*——, 2010 U.S. Dist. LEXIS 15726, at \*12-\*14 (N.D.N.Y. Feb. 23, 2010)(denying qualified immunity to police officers based on a police K-9 biting plaintiff when, the plaintiff asserted, he was lying face down on the ground); *Bradley*, 703 F. Supp. 2d at 121 ("The Court finds that is beyond question that the right to be free from excessive force was clearly established at the time of Plaintiff's arrest. Furthermore, the Court finds that a reasonable officer would have known that continuing to assault a handcuffed and subdued arrestee, and/or releasing a police dog on a handcuffed, immobilized arrestee violated that right.")(internal quotation marks and citations omitted); *Kavazanjian v. Rice*, No. 03-CV-1923 (FB)(SMG), 2005 WL 1377946 at \*——, 2008 U.S. Dist. LEXIS 103881 at \*15-\*16 (E.D.N.Y. Dec. 22, 2008) ("It is beyond question that the right to be free from excessive force was clearly established at the time of Kavazanjian's arrest, and, assuming Kavazanjian's testimony is true, any reasonable officer would have known that releasing a police dog on a handcuffed, immobilized arrestee violated that right."); *Maye v. Vargas*, 638 F.Supp.2d 256 (D. Conn. 2009) ("[N]o objective officer would think it reasonable to release a dog on an individual who is indicating surrender."); *McKinney v. City of Middletown*, No. 3:12-CV-00337(AVC), 2019 WL 10255235, at \*10, 2019 U.S. Dist. LEXIS 233262, at \*25 (D. Conn. May 16, 2019) (law

clearly established "that an officer can not deploy a canine on persons who are compliant and not actively resisting").

Plaintiff argues that Defendants' attempt to "bend the complaint's factual allegations to support [the] contention" that "Deputy Caliendo conducted himself and the K-9 dog properly and did not use excessive force" is patently improper on this motion and must be rejected.

### Analysis - Qualified Immunity

**\*7** The Court applies a two-step analysis to determine whether qualified immunity bars Plaintiff's claim against Deputy Caliendo for civil damages related to his actions taken in the course of his official duties. *Sabir v. Williams*, 37 F.4th 810, 817 (2d Cir. 2022). "Pursuant to that analysis, qualified immunity shields federal and state officials from money damages unless the plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Id.* (cleaned up). For reasons discussed above, Plaintiff has pled facts plausibly showing that Deputy Caliendo violated Plaintiff's Fourth Amendment rights by using excessive force in the course of an arrest. Thus, the Court turns to the clearly established prong.

As the Second Circuit recently stated, "[a]lthough the scope of qualified immunity is considered broad enough to protect 'all but the plainly incompetent or those who knowingly violate the law,' it is not available when an officer's actions are not objectively reasonable in light of clearly established law." *Id.*, at 822 (quoting *Ziglar v. Abbasi*, ___ U.S. ___, 137 S. Ct. 1843, 1867, 198 L. Ed.2d 290 (2017) (internal quotation marks omitted)). The Supreme Court "has 'repeatedly ... stressed the importance of resolving immunity questions at the earliest possible stage in litigation,' " *id.* (quoting *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991)), but when the qualified immunity defense is raised on a motion to dismiss the defendant "must face the 'more stringent standard applicable to this procedural route.' " *Id.* at 823 (quoting *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004)). " 'Not only must the facts supporting the defense appear on the face of the complaint [or the evidence in its attachments], but ... the motion may be granted only where it appears beyond doubt that the plaintiff can prove no set of facts in support of

his claim that would entitle him to relief.' " *Id.* (quoting *McKenna*, 386 F.3d at 436) (internal quotation marks and citation omitted). "On a motion to dismiss, the plaintiffs are 'entitled to all reasonable inferences from the facts alleged, not only those that support [their] claim, but also those that defeat the immunity defense.' " *Id.* (quoting *McKenna*, 386 F.3d at 436).

Here, as Plaintiff argues and based upon the case law he cites, it has been well established for over twenty years that a police officer's use of significant force, including through the use of a K-9 to bite a suspect, on a handcuffed and otherwise subdued detainee violates the Fourth Amendment. Although Defendants contend that Deputy Caliendo conducted himself and the K-9 properly and did not use excessive force under the circumstances as he assessed them to be, Deputy Caliendo's assessment of the circumstances is not supported by the FAC. Even though he contends the situation called for him to make split-second judgments in circumstances that were tense, uncertain, and rapidly evolving, the face of the FAC does not support this assessment. Rather, the allegations indicate that at the time Plaintiff was bitten by Deputy Caliendo's K-9, Plaintiff was handcuffed behind his back, was posing no threat to the officers or others, was not attempting to escape, and was laying face down on the ground during the second bite. Again, while the facts may develop to show different circumstances at the time Plaintiff was bitten, the face of the FAC does not support Deputy Caliendo's assessment. Under the circumstances as alleged in the FAC, a reasonable officer would have known that deploying a police K-9 to bite a handcuffed and subdued arrestee violated the Fourth Amendment. Accordingly, Deputy Caliendo's application for qualified immunity is denied without prejudice, and may be renewed at a later time.

### 2. Assault and Battery Claims

**\*8** Defendants assert that Plaintiff's state law causes of action against Deputy Caliendo for assault and battery must be dismissed. Defendants also contend that "the state law claim for *respondeat superior* against Ulster County for the alleged actions of Deputy Caliendo must be dismissed as a matter of law when the underlying tort upon which it is based has been dismissed." Def. Mem. L. at 10 (citation omitted). Plaintiff opposes these arguments.

### Defendants' Position - Assault and Battery Claims

Defendants cite to 🚩 *Ellington, supra*, for the proposition that there is no precedent to support claims of assault and battery committed through or with the use of a police K-9. Defendants argue that "Plaintiff's claims here are based on nothing but allegations of intentional conduct by Deputy Caliendo, while at the same time entirely failing to allege any intentional conduct by Deputy Caliendo." Def. Mem. L. at 10. Defendants contend that "Plaintiff's claims contradict, are fundamentally at odds with, and are unsupported by Plaintiff's factual allegations and the laws of New York State. As such, ... Plaintiff's state law causes of action for assault and battery" should be dismissed as a matter of law. *Id.*

Defendants also assert that "in the absence of any wrongful or actionable underlying conduct by Deputy Caliendo, there can be no imposition of vicarious liability against Ulster County, Deputy Caliendo's employer, pursuant to the doctrine of *respondeat superior* for Deputy Caliendo's common-law assault and battery claims." *Id.* (citing *Zanfardino v. City of New York*, 230 F. Supp. 3d 325, 338 (S.D.N.Y. 2017))("Plaintiff's claim for *respondeat superior* liability against the City must be dismissed, however, inasmuch as all claims against Detective Wilson are being dismissed, and there is as a result no underlying tort upon which to base such vicarious liability.")(citations omitted)).

### Plaintiff's Position - Assault and Battery Claims

Plaintiff contends that despite the court in 🚩 *Ellington* noting that it had found no law supporting a claim for assault and battery against a police officer or his K-9 based upon the K-9 biting a suspect, the Second Circuit, the district courts within the Second Circuit, and New York state courts "have long recognized the viability of assault and battery claims based on unjustified police K-9 bites." Pl. Mem. L. at 7. Plaintiff contends that "[t]his follows from the fact that, other than the color of law requirement, state law claims of assault and battery are analyzed identically to federal constitutional claims of excessive force." *Id.* (citing 🚩 *Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 398 (S.D.N.Y. 2013) ("In effect, the test for whether a plaintiff can maintain state law assault and battery causes of action against law enforcement officials is the exact same test as the one used to analyze

a Fourth Amendment excessive force claim."); 🚩 *Posr v. Doherty*, 944 F.2d 91, 95 (2d Cir. 1991)(other than color of law requirement, "the essential elements" of 🚩 § 1983 excessive force claim and state law assault and battery claims are "substantially identical").

In support of his position, Plaintiff cites to *McKinney v. City of Middletown*, 712 Fed. Appx. 97, 98 (2d Cir. 2018)(Summary Order), where the Second Circuit reversed summary judgment in favor of police officers on plaintiff's claims of excessive force and assault and battery under Connecticut state law based on the officers' "use of baton strikes, the use of a taser, and, especially, the use of a police canine." Plaintiff argues that federal courts in this Circuit have routinely recognized that state law assault and battery claims will arise from officers' unreasonable use of police dogs. Pl. Mem. L. at 7-8 (citing *Boudreau v. Smith*, No. 3:17-cv-589 (SRU), 2017 WL 2979682 at *5, 2017 U.S. Dist. LEXIS 108048 at *14 (D. Conn Jul. 12, 2017)("Boudreau alleges that Officer Amasino assaulted him with his patrol canine, Joker, while he was handcuffed and adhering to the officers' demands, causing him physical and psychological injuries.... Because the assault and battery claim arises out of the same set of facts as the Fourth Amendment excessive force claim, I will permit the assault and battery claim to proceed at this time."); *Bradley v. Bongiovanni*, No. 18-CV-6823-FPG, 2021 WL 3635206 at *——, 2021 U.S. Dist. LEXIS 155044 at *30-34 (W.D.N.Y. Aug. 17, 2021) (denying summary judgment on plaintiff's excessive force and assault and battery claims based, in part, on the defendant's failure to intervene and stop a police dog from biting plaintiff on his wrist and leg after Plaintiff was on the ground and handcuffed); *Sanabria v. Martins*, 568 F. Supp. 2d 220, 228 (D. Conn. 2008)(on the plaintiff's constitutional excessive force and Connecticut state law assault and battery claims based on the contention that the defendant utilized his police dog, Thor, in an excessive manner, the court held: "Whether Thor subdued Sanabria in a manner that Martins did not anticipate—for example, by biting Sanabria with more force than strictly necessary after Martins decided to utilize Thor—may certainly prove relevant to the qualified-immunity inquiry, but this would not be a sufficient basis on which to conclude that there was no constitutional violation in the first place."); 🚩 *Campbell v. City of Springboro, Ohio*, 700 F.3d 779, 791 (6th Cir. 2012) (upholding denial of summary judgment on plaintiff's excessive force and state-law assault and battery claims based on police K-9 bites); *Castro v. Martin*, 854 Fed. Appx. 888, 890 (9th Cir. 2021)(upholding denial of summary judgment

on plaintiffs excessive force and state-law battery claims based on police K-9 bites)). Plaintiff maintains that the same holds true for New York state courts. *Id.* (citing 📁 *Relf v. City of Troy*, 169 A.D.3d 1223, 1226-27 (3rd Dept. 2019)("[I]f Ashe intentionally released his dog with the intent that she seize or bite someone (*i.e.*, the robbery suspects), he can be held responsible for battery against a person who was unintentionally injured by the instrumentality he released.").

**\*9** Plaintiff argues that the Court should exercise supplemental jurisdiction "over the state law claims against the County of Ulster" because the "state law assault and battery claims against the County are clearly part of the same case or controversy as his federal constitutional claim against Caliendo." 📁*Id.*

### Analysis - Assault and Battery Claims

### Assault Claim

Under New York Law, a civil assault is an intentional placing of another person in fear of imminent harmful or offensive contact. *Girden v. Sandals Int'l*, 262 F.3d 195, 203 (2d Cir. 2001). To recover damages for assault, there must be proof of physical conduct placing the plaintiff in imminent apprehension of harmful contact. *Morgan v. City of Utica*, 2021 WL 2036680, at \*5 (N.D.N.Y. May 21, 2021). Here, the allegations that Deputy Caliendo subjected Plaintiff to a K-9 attack and failed to restrain the K-9 for which he was responsible are sufficient to support a plausible inference that Deputy Caliendo intentionally placed Plaintiff in fear of imminent harmful or offensive contact from the dog before Plaintiff was actually bitten. *See* FAC § 26 ("By subjecting Plaintiff to a K-9 attack without justification and failing to secure the police dog for which he was responsible, Defendant Caliendo committed an assault against Plaintiff, as he caused Plaintiff to reasonably fear a harmful touching."); ¶ 27 ("Defendant County of Ulster has *respondeat superior* liability for the assault and battery suffered by Plaintiff when he was bitten twice by the UCSO police K-9 without justification and made to reasonably fear a harmful touching."). Further, the allegations that Plaintiff was first bitten while he was walking to the patrol car, and then bitten a second time while he was on the ground, are sufficient to support a plausible inference that Plaintiff was placed in imminent apprehension of harmful contact from the

K-9 between the first and second bite. Thus, the civil assault claim against Deputy Caliendo will be allowed to proceed.

### Battery Claim

A civil battery is an intentional wrongful physical contact with another person without consent, *Girden*, 262 F.3d at 203, and may be accomplished either personally or by means of an instrumentality such as a police dog. *See* 📁*Relf*, 169 A.D.3d at 1226. [5] While there appear to be few cases that have examined New York State civil battery claims based on police K-9 bites, 📁*Relf* is one that allowed such a claim to proceed.

Furthermore, a number of courts, including this one, have held that the Fourth Amendment excessive force standard applies to assault and battery claims against a police officer under New York law. *See* 📁*Marcano v. City of Schenectady*, 38 F. Supp. 3d 238, 263 (N.D.N.Y. 2014)(citing *Humphrey v. Landers*, 344 Fed. Appx. 686, 688 (2d Cir. 2009)). These holdings are best understood in the context of civil battery claims because the 📁*Graham* Fourth Amendment standard is based upon the use of excessive force by the police. Here, because Plaintiff has stated a plausible Fourth Amendment claim against Deputy Caliendo based upon the use of excessive force, and because Plaintiff's excessive force and battery claims are based upon the same factual circumstances, Plaintiff has stated a plausible civil battery claim against Deputy Caliendo. Accordingly, the civil battery claim will be allowed to proceed.

### Vicarious Liability - County of Ulster

**\*10** The allegations in the FAC indicate that Deputy Caliendo was acting in furtherance of his employer's law enforcement function when the circumstances arose that form the basis of the state law claims. There is no indication on the face of the FAC that Deputy Caliendo acted solely for a personal reason or motive when his K-9 bit Plaintiff. Thus, there is sufficient reason to allow the *respondeat superior* liability claim against the County of Ulster to proceed based on the assault and battery that Plaintiff contends he suffered.

**3. Municipal/*Monell* Liability against the County of Ulster**

Defendants argue that the Court "should dismiss Ulster County as an improper party in this action, as no viable claims, state or federal, have been asserted against it, and Defendant Ulster County cannot be held liable for the actions of Defendant Deputy Caliendo under 🚩 § 1983 under a theory of *respondent superior* as a matter of law." Def. M. L. at 11 (citing 🚩 *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995)).

**Analysis - *Monell* Liability**

As to the County of Ulster, the FAC asserts: "Defendant County of Ulster has *respondeat superior* liability for the assault and battery suffered by Plaintiff when he was bitten twice by the UCSO police K-9 without justification and made

to reasonably fear a harmful touching." FAC ¶ 27. For reasons stated above, the FAC asserts a plausible claim in this regard.

The only 🚩 § 1983 claim in the FAC is against Deputy Caliendo for violating Plaintiff's Fourth Amendment rights by subjecting him to unreasonable force. *See* FAC ¶ 24. Thus, there is no reason for the Court to determine whether a *Monell* liability claim could be sustained against the County of Ulster. Accordingly, Defendants' motion in this regard is denied.

**V. CONCLUSION**

For the reasons set forth above, Defendants' motion to dismiss, Dkt. 11, is **DENIED**.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2022 WL 2954370

---

**Footnotes**

1   The court in 🚩 *Whitfield* stated:

> With the bite-and-hold technique, K-9 dogs are trained to bite and hold the suspect until commanded to release the suspect by the law enforcement K-9 officer. The suspect often struggles to avoid pain, injury, and arrest, prompting the dog to regrasp and hold with greater bite force. With this technique, the K-9 dog continues to bite and hold regardless of what the suspect does (surrenders, stands still, or attempts to flee). *Injury is almost inevitable.*

> *Id.* at *30 (emphasis in original) (quoting 🚩 *Melgar v. Greene*, 593 F.3d 348,361 (4th Cir. 2010)).

2   The FAC asserts at ¶ 22: "The acts and omissions of Defendant Caliendo were malicious, wanton and taken in reckless disregard of Plaintiff's federal and state rights to be free from excessive force."

3   In *Kruger*, a worker brought a personal injury action against the premises owner and others, seeking damages for injuries he allegedly sustained when he fell from an elevation while working on a construction project at the premises. The Supreme Court, Kings County, denied the worker's motion to amend the complaint, and he appealed. The Appellate Division, Second Department, held that the worker stated a claim for civil battery and intentional breach of voluntarily assumed duty of care to provide medical care, but that the Workers' Compensation Law's exclusive remedy provision barred the worker's claim for negligent infliction of emotional distress. The Second Department found that "[w]hile an intentional tort may give rise to a cause of action outside of the ambit of the Workers' Compensation Law, the complaint must allege an intentional or deliberate act by the employer directed at causing harm to [a] particular employee." *Kruger*, 87 A.D.3d at 718–719, 930 N.Y.S.2d 11.

4    In *Fernandez*, the Appellate Division, Second Department held that under the doctrine of *respondeat superior*, an employer can be held vicariously liable for the torts committed by an employee acting within the scope of the employment. *Fernandez*, 60 A.D.3d 893, 896, 876 N.Y.S.2d 99, 102. "Pursuant to the doctrine, the employer may be held liable when the employee acts negligently or intentionally, so long as the tortious conduct is generally foreseeable and a natural incident of the employment." *Id.* (citations omitted). "However, liability will not attach for torts committed by an employee who is acting solely for personal motives unrelated to the furtherance of the employer's business." *Id.*

5    ("[I]f Ashe intentionally released his dog with the intent that she seize or bite someone (i.e., the robbery suspects), he can be held responsible for battery against a person who was unintentionally injured by the instrumentality he released.")(citation omitted).

---

**End of Document**
© 2023 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:22-cv-01188-BKS-ML   Document 10   Filed 03/06/23   Page 41 of 55

Brown v. Peters, Not Reported in F.Supp. (1997)

1997 WL 599355
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kenneth BROWN, Plaintiff,

v.

Andrew PETERS, Warden, Watertown Correctional
Facility; Joseph Williams, Warden, Lincoln Work–
Release Center; Francis J. Herman, Senior Parole
Officer Interstate Bureau; T. Stanford, Senior Parole
Officer; Deborah Stewart, Parole Officer; John Doe #
1, Parole Agent, Watertown Correctional Facility; John
Doe # 2, Parole Agent, Lincoln Work Release Center;
Susan Bishop, Director of Interstate Compact, South
Carolina; Cecil Magee, Parole Officer, South Carolina;
Frank Barton, Parole Officer, South Carolina; John
McMahan, Parole Officer, South Carolina, Defendants.

No. Civ.A. 95CV1641RSPDS.
|
Sept. 22, 1997.

**Attorneys and Law Firms**

Kenneth Brown, State Court Institute–Greene, Waynesburg,
PA, plaintiff, pro se.

Dennis C. Vacco, New York State Attorney General, The
Capitol Albany, NY, for defendants Peters, Herman Stewart,
Doe # 1, Doe # 2, and Williams, Jeffrey M. Dvorin, Assistant
Attorney General, Carl N. Lundberg, Chief Legal Counsel,
South Carolina Department of Probation, Columbia, SC, for
defendants Bishop, Magee, Barton, McMahan, and Stanford,
Carl N. Lundberg, of Counsel.

DECISION AND ORDER

POOLER, J.

**\*1** The above matter comes to me following a Report–
Recommendation by Magistrate Judge Daniel Scanlon, Jr.,
duly filed on April 17, 1997. Following ten days from the
service thereof, the Clerk has sent me the entire file, including
any and all objections filed by the parties herein.

Plaintiff Kenneth Brown commenced this Section 1983 civil
rights action on November 17, 1995. On February 12,

1996, Magistrate Judge Scanlon ordered Brown to submit an
amended complaint alleging the specific acts committed by
the individuals named as defendants which Brown claimed
violated his constitutional rights. Brown filed an amended
complaint on March 21, 1996. In his amended complaint,
Brown alleged that defendants violated his rights under the
Eighth and Fourteenth Amendments by failing to process
properly his interstate compact paperwork, resulting in Brown
being imprisoned pursuant to a parole hold when in fact
he had never violated the conditions of his parole. For a
more complete statement of Brown's claims, see his amended
complaint. Dkt. No. 5.

On August 5, 1996, defendants Peters and Williams made
a motion to dismiss for failure to state a claim pursuant to
Fed.R.Civ.P. 12(b)(6). Dkt. No. 13; Dkt. No. 14, at 2.
On August 19, 1996, defendants Bishop, Magee, Barton, and
McMahan made a motion to dismiss the complaint against
them or, in the alternative, for summary judgment. Dkt. No.
20. On October 17, 1996, defendants Herman, Stewart, and
Stanford made a motion to dismiss for failure to state a
claim. Dkt. No 34. On April 17, 1996, Magistrate Judge
Scanlon recommended that all defendants' motions to dismiss
be granted and that the complaint be dismissed. Dkt. No. 50.

On June 9, 1997, Brown filed objections to the
magistrate judge's report-recommendation, having been
granted additional time in which to do so. Dkt. No. 52. In
addition, Brown filed on June 9, 1997, a motion for leave to
file a second amended complaint and a copy of his proposed
amended complaint. Dkt. No. 53. I turn first to the last motion
filed, Brown's motion for leave to amend his complaint a
second time.

Brown seeks to file a second amended complaint "setting
forth in detail the personal involvement of each defendant
and how their acts of commission and omission served to
deprive plaintiff of Constitutionally secured rights." Dkt. No.
53. The district court has discretion whether to grant leave
to amend. Ruffolo v. Oppenheimer & Co., 987 F.2d 129,
131 (2d Cir.1993). In exercising that discretion, the court
should freely grant leave to amend when justice so requires.
Fed.R.Civ.P. 15(a). However, the court need not grant leave
to amend where it appears that amendment would prove to be
unproductive or futile. Ruffolo, 987 F.2d at 131.

Here, Brown moved to amend his complaint to add additional
allegations against the named defendants. However, the

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 5:22-cv-01188-BKS-ML   Document 10   Filed 03/06/23   Page 42 of 55

additional allegations fail to cure the deficiency which forms the basis of defendants' motion to dismiss—the absence of defendants' personal involvement in a constitutional deprivation. Section 1983 imposes liability upon an individual only when personal involvement of that individual subjects a person to deprivation of a federal right.

*See* Monell v. Dep't of Soc. Servs., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A complaint is fatally defective if it fails to allege personal involvement sufficient to establish that a supervisor was "directly and personally responsible for the purported unlawful conduct." *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 886 (2d Cir.1987).

*2 Brown's proposed amended complaint alleges in conclusory fashion that defendants acted "in a grossly negligent and concerted manner which breached their duties owed to Plaintiff and is the proximate cause of [the violation of plaintiff's constitutional rights]." Proposed Am. Compl., at 3. Brown continues in the same vein, stating that defendants owed duties to plaintiff to carry out their jobs in a professional manner and they failed to carry out those duties appropriately. The complaint states that defendants held specific responsibilities, such as checking for outstanding warrants, which if performed properly should have alerted them to a problem. However, nowhere does the complaint set forth allegations that these defendants either participated directly in any constitutional infraction or that they were even aware of such an infraction. The proposed amended complaint merely alleges that these defendants failed in performing their supervisory and ministerial functions. "These bare assertions do not state a claim under 42 U.S.C. § 1983." *Smiley v. Davis,* 1988 WL 78306, *2 (S.D.N.Y.).

This plaintiff previously has had the opportunity to amend his complaint for the same reason asserted here, to allege personal involvement on the part of defendants. Brown's first amended complaint failed to accomplish that task, and it appears that even if allowed to amend again Brown would be unable to make the requisite allegations with sufficient specificity to sustain his complaint. Consequently, I find that amendment would be futile, and I deny Brown's motion for leave to amend his complaint.

I turn now to the magistrate judge's report-recommendation and defendants' motions. The magistrate judge recommends that I grant defendants' motions and dismiss the complaint as to all defendants. The report-recommendation clearly describes the grounds on which the magistrate judge

recommends dismissal as to each defendant. Fed.R.Civ.P. 72(b) requires the district judge to make a *de novo* determination on "any portion of the magistrate's disposition to which specific, written objection has been made." Brown's objections fail to address directly any of the analysis. Brown's objections state (1) that he has been deprived of his constitutional rights; (2) that he has stated a cause of action; (3) that the court wrongly refused to appoint an attorney for him and wrongly stayed discovery pending the outcome of these motions; (4) that he seeks to file an amended complaint; (5) the standard of review for a Fed.R.Civ.P. 12(b)(6) motion; (6) that he disagrees with the magistrate judge's recommendation to grant defendants' motions because the allegations in his complaint, which he repeats, show that his rights were violated; and (7) the text of the Fourteenth and Eighth Amendments.

Even affording the objections the liberal reading required for *pro se* pleadings, I find that these objections fail to state any basis whatsoever, much less a specific one, for the court to adopt the magistrate judge's rulings. They simply re-state the relief sought and the facts on which Brown grounds his complaint and conclude that the magistrate judge's conclusions are wrong. When the parties make only frivolous, conclusive, or general objections, the court reviews the report-recommendation for clear error. *See* Camardo v. General Motors Hourly–Rate Employees Pension Plan, 806 F.Supp. 380, 382 (W.D.N.Y.1992) (court need not consider objections which are frivolous, conclusive, or general and constitute a rehashing of the same arguments and positions taken in original pleadings); *Chambrier v. Leonardo,* 1991 WL 44838, *1 (S.D.N.Y.) (restatement of allegations already before the court and assertion that valid constitutional claim exists insufficient to form specific objections); *Schoolfield v. Dep't of Correction,* 1994 WL 119740, *2 (S.D.N.Y.) (objections stating that magistrate judge's decisions are wrong and unjust, and restating relief sought and facts upon which complaint grounded, are conclusory and do not form specific basis for not adopting report-recommendation); *Vargas v. Keane,* 1994 WL 693885, *1 (S.D.N.Y.) (general objection that report does not address violation of petitioner's constitutional rights is a general plea that report not be adopted and cannot be treated as objection within the meaning of 28 U.S.C. § 636), *aff'd,* 86 F.3d 1273 (2d Cir.), *cert. denied,* 519 U.S. 895, 117 S.Ct. 240, 136 L.Ed.2d 169 (U.S.1996). *See also* Scipio v. Keane, 1997 WL 375601, *1 (1997) (when objections fail to address analysis directly, court reviews report-recommendation for clear error); Fed.R.Civ.P.

**Brown v. Peters, Not Reported in F.Supp. (1997)**

Case 5:22-cv-01188-BKS-ML   Document 10   Filed 03/06/23   Page 43 of 55

72(b), Advisory Comm. Note (when no specific, written objections filed, "court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation").

**\*3** Because Brown fails to make specific objections or provide any basis for his general objections, I review the report-recommendation for clear error. After careful review, I conclude that the magistrate judge's report-recommendation is well-reasoned and is not clearly erroneous.[1] The magistrate judge employed the proper standard, accurately recited the facts, and reasonably applied the law to those facts. Consequently, I adopt the report-recommendation.

CONCLUSION

Because plaintiff's proposed amendment demonstrates that amendment would be futile, I deny plaintiff's motion for leave to amend his complaint. I approve the magistrate judge's recommendation and grant defendants' motions to dismiss. Plaintiff's complaint is dismissed in its entirety.

IT IS SO ORDERED.

**ORDER and REPORT–RECOMMENDATION**

This matter was referred to the undersigned for report and recommendation by the Hon. Rosemary S. Pooler, United States District Judge, by Standing Order dated November 12, 1986. Currently before this Court are a number of motions. Defendants Peters and Williams have filed a motion to dismiss (dkt.13); defendants Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative to dismiss (dkt.20); and defendants Herman, Stewart and Stanford also have filed a motion to dismiss (dkt.34). Plaintiff opposes these three motions (dkts.27, 29, 33, 38). Defendants Bishop, Magee and McMahan have filed a motion to stay discovery (dkt.41) and plaintiff has filed a motion to extend time (dkt.44) in which to file opposition to the latter motion for a stay of discovery.

The Court addresses these issues *seriatim*.

**BACKGROUND**

Plaintiff's amended complaint, which he has brought pursuant to 42 U.S.C. § 1983, alleges the following facts. In October, 1991, plaintiff was incarcerated in the Watertown Correctional Facility in Watertown, New York. He applied for an interstate compact because he wanted to return to South Carolina to live with his common law wife, Pamela Reid. During the application process, he was interviewed by the facility's parole officer, identified only as defendant John Doe # 1. After signing the necessary papers, his application was forwarded to defendant Andrew Peters, the facility's superintendent, who reviewed, signed and forwarded the papers to the Interstate Bureau. Amend. Compl. at ¶¶ 1–2; Exs. A, B.

On or about January 15, 1992, while his compact was waiting for review at the Interstate Bureau, plaintiff was approved for work release and sent to the Lincoln Work Release Center in New York City. While at the center, plaintiff spoke to a parole officer, defendant John Doe # 2, and told him that he was seeking a compact that would return him to South Carolina upon his conditional release. Plaintiff claims the parole officer told him that he would handle the necessary paperwork, although the officer had had no experience with an interstate compact. Amend. Compl. at ¶¶ 3, 4.

**\*4** Plaintiff, meanwhile, asked Reid whether any officials had contacted her in South Carolina regarding his prospective residence in that state. Upon discovering no one had contacted her, plaintiff asked a lawyer he knew, Navron Ponds, to inquire as to his compact status. In March, 1992, the lawyer spoke with defendant Susan Bishop, who is the director of the interstate compact program in South Carolina. Bishop allegedly told Ponds that plaintiff "was disapproved because there was a discrepancy about approving plaintiff['s] compact." The "discrepancy" was the fact that plaintiff owed the state of South Carolina eighty-six days of confinement from a previous sentence. Plaintiff claims Bishop told Ponds to contact defendants Cecil Magee and Frank Barton, who worked for the South Carolina Parole Department. Sometime in March, 1992, Ponds made some calls to Barton and Magee. A verbal agreement was reached, and plaintiff, upon speaking with Barton and Magee was told that his compact had been approved. He also was told that he should report to the South Carolina Department of Parole upon being released. Amend. Compl. at ¶¶ 5–7.

Prior to leaving the Lincoln Work Release Center, plaintiff processed paperwork related to his interstate compact. His paperwork was sent by Doe # 2 to defendant Joseph Williams,

the superintendent of the center. Williams reviewed, signed and returned the paperwork to plaintiff. On May 1, 1992, upon his release from the center, plaintiff traveled to South Carolina. Three days later, he entered a South Carolina parole office and promptly was arrested because of the eighty-six days of confinement that he owed the state. Plaintiff's paperwork was given to defendant John McMahan, a parole officer. Plaintiff claims that McMahan never returned this paperwork to him. On May 20, 1992, the state of South Carolina revoked plaintiff's parole and plaintiff was returned to prison to serve the eighty-six days he owed. When he asked McMahan what would happen to his one year of parole from New York, the officer allegedly told him that his New York parole would run concurrently with his South Carolina parole, and that when he finished his South Carolina parole, he would not owe any parole whatsoever. Plaintiff served the eighty-six days he owed and was released on July 31, 1992. Amend. Compl. at ¶¶ 8–10.

In February, 1993, plaintiff was arrested on robbery charges in South Carolina. The charges ultimately were dropped, but he apparently encountered some difficulties regarding this arrest as a result of a parole hold that New York state had placed upon him. Bishop's office told him that it had nothing to do with his parole hold and that any problem that he had was between him and the state of New York. He talked to authorities in Albany, New York regarding the parole hold, but was not successful in his efforts to have the hold removed. On September 30, 1993, after had been extradited to New York as a fugitive from justice, plaintiff was given a preliminary hearing at Riker's Island, New York. The hearing officer found no probable cause that plaintiff had violated any condition of parole. He was released. Amend. Compl. at ¶¶ 11–14; Exs. C–J.

**\*5** Plaintiff claims that he would not have suffered hardships if his interstate compact had been handled correctly. He alleges that defendant Deborah Stewart failed to follow up and see whether plaintiff had arrived in South Carolina. If she had, he argues, she would have discovered that he had been arrested upon his arrival. He alleges that defendant Francis Herman, a parole officer at the Interstate Bureau failed to do his job by not investigating plaintiff's violation reports. Amend. Compl. at ¶¶ 15–17; Exs. F–I.

Plaintiff asserts that the foregoing amounts violations of his Eighth and Fourteenth Amendment rights, wherefore he both compensatory and declaratory relief.

## DISCUSSION

A. Motion to Dismiss by Williams and Peters.

Williams and Peters have filed a motion to dismiss plaintiff's complaint pursuant to FED.R.CIV.P. 12(b)(6) on the grounds that it fails to state a claim upon which relief may be granted. In a Rule 12(b)(6) motion, all factual allegations in the complaint must be taken and construed in plaintiff's favor. *See LaBounty v. Adler,* 933 F.2d 121, 122 (2d Cir.1991) (citing *Ortiz v. Cornette,* 867 F.2d 146, 149 (1989)). The Court's role is not to assess whether plaintiffs have raised questions of fact or demonstrated an entitlement to a judgment as a matter of law, as in a motion made pursuant to FED.R.CIV.P. 56 for summary judgment, but rather to determine whether plaintiff's complaint sufficiently alleges all of the necessary legal elements to state a claim under the law. *See Christopher v. Laidlaw Transit, Inc.* 899 F.Supp. 1224, 1226 (S.D.N.Y.1995), (citing *Ricciuti v. New York City Transit Authority,* 941 F.2d 119, 124 (2d Cir.1991)). Factual allegations in brief or memoranda may not be considered. *Fonte v. Board of Managers of Continental Towers Condominium,* 848 F.2d 24, 25 (2d Cir.1988). The Court now turns to the issues presented.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994). As superintendents at New York State Correctional facilities, Williams and Peter may be found personally involved in the alleged deprivation of plaintiff's constitutionally protected rights by a showing that they: (1) directly participated in the infraction; (2) knew of the infraction, but failed to remedy the wrong; (3) created or continued a policy or custom under which unconstitutional practices occurred; or (4) were grossly negligent in managing subordinates who caused unlawful conditions or events. *Id.,* (quoting *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986)). Supervisory liability also may be imposed against Williams or Peters with a showing of gross negligence or deliberate indifference to plaintiff's constitutional rights. *Id.* Absent some personal involvement by Williams or Peters in the allegedly constitutionally infirm conduct of their subordinates, neither can be held liable under § 1983. *Gill v. Mooney,* 824 F.2d 192, 196 (2d Cir.1987).

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 5:22-cv-01188-BKS-ML   Document 10   Filed 03/06/23   Page 45 of 55

**\*6** Plaintiff has not provided any evidence linking either Williams or Peters to his alleged constitutional deprivations. All that plaintiff has alleged is that Williams and Peters, as superintendents, have reviewed and signed paperwork relating to plaintiff's compact. Though it has long been held that *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers" for the purpose of a motion to dismiss under 🚩 Rule 12(b)(6), 🚩 *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972), plaintiff has not explained how the ministerial conduct of these two defendants was violative of the Constitution. Their motion to dimiss should be granted.

B. Motion for Summary Judgment or to Dismiss by Bishop, Magee, Barton and McMahan.

Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative a motion to dismiss. The Court will treat their motion as a motion to dismiss. "[C]omplaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." 🚩 *Barr v. Adams,* 810 F.2d 358, 363 (2d Cir.1987). Plaintiff has not alleged specifically how the conduct of these four defendants infringed upon his constitutional rights. In his amended complaint, he contends that defendants violated the Constitution by "continuously breaching [[[their] duty" to him. This language underscores the defect with the complaint: if it alleges anything at all, it alleges that defendants were negligent in handling plaintiff's interstate compact and parole. To state a cognizable 🚩 § 1983 claim, the prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice. 🚩 *Hayes v. New York City Dept. of Corrections,* 84 F.3d 614, 620 (2d Cir.1996); 🚩 *Morales v. New York State Dep't of Corrections,* 842 F.2d 27, 30 (2d Cir.1988) (🚩 section 1983 does not encompass a cause of action sounding in negligence).

The Court finds that the claims against Bishop, Magee, Barton and McMahan should be dismissed.

C. Motion to Dismiss by Herman, Stewart and Stanford.

Plaintiff's claim against Stewart is that she failed to follow up and see whether plaintiff had arrived in South Carolina. Herman, he likewise asserts, failed to do his job because he did not investigate plaintiff's violation reports. Plaintiff has not alleged how these actions run afoul of the Constitution; and again, these claims seem to be grounded in negligence, which is not actionable under 🚩 § 1983. 🚩 *Hayes,* 84 F.3d at 620.

Plaintiff's claim against Stanford must fail because his complaint literally fails to state a claim against that defendant. Aside from naming Stanford as a defendant, and alleging that he was the appointed Senior Parole Officer at plaintiff's September 30, 1993 revocation hearing at Riker's Island, plaintiff does not detail how Stanford violated his constitutional rights. Absent some personal involvement by Stanford in the allegedly constitutionally infirm conduct of his subordinates, he cannot be held liable under 🚩 § 1983. 🚩 *Gill,* 824 F.2d at 196.

**\*7** Accordingly, the Court finds that Stanford, Stewart and Herman's motion to dismiss should be granted.

D. Plaintiff's "John Doe" Claims.

In so far as neither John Doe # 1 nor John Doe # 2 have been identified and served in this matter, the Court does not have jurisdiction over these parties and does not reach the merits of plaintiff's claims against them.

E. Discovery Motions.

Defendants Bishop, Magee and McMahan have filed a motion to stay discovery until the Court has made a ruling on their motion to dismiss. Plaintiff has filed a motion to extend the time in which he may file opposition to defendants' motion. Plaintiff, however, has filed his opposing response (dkt.47), therefore his instant discovery motion is denied as moot. In that the Court recommends granting defendants' motion to dismiss, discovery in this matter would be fruitless. Accordingly, defendants' motion for a stay of discovery pending the resolution of their motion to dismiss is granted.

## CONCLUSION

WHEREFORE, based upon the foregoing analysis, it is hereby

ORDERED, that plaintiff's motion to extend the time to file an opposing reply (dkt.44) is denied as moot; and it is further

**Brown v. Peters, Not Reported in F.Supp. (1997)**

Case 5:22-cv-01188-BKS-ML   Document 10   Filed 03/06/23   Page 46 of 55

ORDERED, that defendants Bishop, Magee and McMahan's motion to stay discovery until their motion to dismiss is decided (dkt.41) is granted; and it is further

RECOMMENDED, that defendants Peters and Williams' motion to dismiss (dkt.13) be granted; and it is further

RECOMMENDED, that defendants Bishop, Magee, Barton and McMahan's motion to dismiss (dkt.20) be granted; and it is further

RECOMMENDED, that defendants Herman, Stewart and Stanford's motion to dismiss (dkt.34) be granted.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.* *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 6(a), 6(e) and 72.

**All Citations**

Not Reported in F.Supp., 1997 WL 599355

## Footnotes

1    I note, however, that the report-recommendation would survive even *de novo* review.

**End of Document**                                   © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 4236401
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Vincent VERDI, Plaintiff,

v.

R. FARAH, et al., Defendants.

9:22-CV-0825 (BKS/CFH)
|
Signed September 14, 2022

**Attorneys and Law Firms**

VINCENT VERDI, Plaintiff, Pro Se, 19-A-2467, Shawangunk Correctional Facility, P.O. Box 700, Wallkill, NY 12589.

**DECISION AND ORDER**

BRENDA K. SANNES, Chief United States District Judge

## I. INTRODUCTION

**\*1** The Clerk has sent to the Court for review a complaint submitted by pro se plaintiff Vincent Verdi asserting claims pursuant to 🚩42 U.S.C. § 1983 ("🚩Section 1983"). Dkt. No. 1 ("Compl."). Plaintiff, who is incarcerated at Shawangunk Correctional Facility ("Shawangunk C.F."), has paid the filing fee for this action.

## II. SUFFICIENCY OF THE COMPLAINT

### A. Governing Legal Standard

Pursuant to 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A; *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee); 🚩*Abbas v. Dixon*, 480 F.3d 636,

639 (2d Cir. 2007) (stating that both 🚩sections 1915 and 1915A are available to evaluate prisoner pro se complaints).

In reviewing a pro se complaint, the court has a duty to show liberality toward pro se litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and should exercise "extreme caution ... in ordering sua sponte dismissal of a pro se complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." 🚩*Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted). Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." 🚩*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 🚩*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Although the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." 🚩*Iqbal*, 556 U.S. at 678 (citing 🚩*Twombly*, 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal quotation marks and alterations omitted).

### B. Summary of the Complaint

**\*2** Plaintiff asserts allegations of wrongdoing that occurred while he was incarcerated at Shawangunk C.F. *See generally* Compl. The following facts are set forth as alleged by plaintiff in his complaint.[1]

Plaintiff is sixty-seven years old and "suffers from degenerative osteoarthritis[.]" Compl. at 2. In or around October, 2021, plaintiff "submitted a sick call slip" requesting to see defendant Dr. HLA-PE-WJN "as soon as possible." *Id.* Shortly thereafter, plaintiff met with Dr. HLA-PE-WJN and "complained of excruciating pain in his left hip, and how it was impacting his daily activities in a substantial way[.]" *Id.* Dr. HLA-PE-WJN "subsequently ordered that an x-ray be taken of plaintiff's left hip." *Id.* at 3.

In or around November, 2021, plaintiff's left hip was x-rayed at his facility. Compl. at 3. In or around February, 2022, plaintiff "was called to the infirmary for his annual physical examination." *Id.* Plaintiff asked the nurse practitioner who performed the examination if his radiological report was in his medical file. *Id.* The nurse practitioner "confirmed that it was, and informed plaintiff that the radiologist had determined that [he] suffered a 9mm osseous fragment seen inferior to the left pubic arch, consistent with an avulsion injury of the ischial tuberosity[.]" *Id.* The radiologist also determined that plaintiff "suffers from degenerative osteoarthritis of his left hip and knee." *Id.* The radiologist's report was completed on December 15, 2021, and Dr. HLA-PE-WJN initialed the report on January 5, 2022. *Id.*

The day after plaintiff's physical exam, he submitted a sick call slip requesting an "immediate appointment" with Dr. HLA-PE-WJN "for the purpose of discussing [his] radiological report and the medical course of action the doctor would order to treat [him]." Compl. at 3. Roughly one week later, plaintiff received an appointment to see Dr. HLA-PE-WJN on April 7, 2022. *Id.* Plaintiff was "incredulous as to why the doctor would schedule the appointment so far off." *Id.* Plaintiff "subsequently sent Dr. HLA-PE-WJN numerous requests for an earlier appointment, explaining that his pain was getting worse and was having a significant impact on his daily activities and life." *Id.* at 3-4. Dr. HLA-PE-WJN denied each of plaintiff's requests. *Id.* at 4.

On April 7, 2022, plaintiff met with Dr. HLA-PE-WJN, explained his symptoms, and asked why his requests to be seen earlier were ignored. Compl. at 4. Dr. HLA-PE-WJN "became very defensive and berated plaintiff." *Id.* Dr. HLA-PE-WJN then discussed a treatment plan with plaintiff, and told him "not to put any weight on his left side." *Id.* Plaintiff "immediately understood that keeping his weight off his left side without tipping over would require a cane, and asked the doctor if he would write a prescription for one." *Id.* Plaintiff also asked for a prescription for a vitamin D supplement to

"help [his] degenerative osteoarthritis," and requested a "bone mineral density test" and a permit to possess a chair in his cell. *Id.* at 4-5. Dr. HLA-PE-WJN denied all of plaintiff's requests, and instead "ordered that another x-ray be taken of plaintiff's left hip." *Id.* at 4-5.

**\*3** Following plaintiff's evaluation, he filed a grievance requesting a medical permit for a chair. Compl. at 5. The Supervisor of the Inmate Grievance Resolution Committee ("IGRC") recommended that plaintiff file "a Special Accommodation Request" with the prison administration regarding the chair. *Id.*

On April 14, 2022, plaintiff submitted a Special Accommodation Request regarding the chair. Compl. at 5. On April 18, 2022, Dr. HLA-PE-WJN received plaintiff's request and "checked the boxes on the ... form indicating that plaintiff had no physical disability or any functional limitations." *Id.* Dr. HLA-PE-WJN also falsely "indicated on the form that there was no medical record on file of plaintiff's injury." *Id.*

On April 27, 2022, the Deputy Superintendent for Programs (not a party) denied plaintiff's Special Accommodation Request for the chair in his cell based on the information provided by Dr. HLA-PE-WJN. Compl. at 6. On May 3, 2022, plaintiff "was called to the IGRC hearing being conducted to resolve [his] grievance" regarding the medical permit for a chair. *Id.* The IGRC "approved plaintiff's request for a chair ... based on the radiological report of plaintiff's injury and the symptoms he described." *Id.* Corrections Sergeant Gonzalez, the IGRC's "reviewing officer," also indicated that "chairs in cells do not present any security concerns, and ... incarcerated individuals ... residing in double-bunked cells are permitted chairs." *Id.*

Later that day, plaintiff "appealed the IGRC decision to Superintendent McGuiness seeking his approval of [the IGRC's] decision." Compl. at 6. Plaintiff also wrote to Dr. HLA-PE-WJN's supervisor, defendant Deputy Superintendent for Administration at Shawangunk C.F. Farah, to make this official "aware of plaintiff's injury and the radiological report" and "explain[ ] how his injury was impacting his ability to walk, bend down and stand for any length of time" without "excruciating" pain. *Id.* Defendant Farah never responded to plaintiff's letter, and failed to otherwise "remedy plaintiff's concerns and direct Dr. HLA-PE-WJN to treat plaintiff." *Id.* at 7.

On May 12, 2022, Superintendent McGuiness "dismissed the IGRC's decision, ignored Sergeant Gonzalez's assessment, and denied plaintiff's request for a chair." Compl. at 7. Superintendent McGuiness based his decision on the opinion of a facility nurse administrator that a chair in plaintiff's cell presented a security and safety risk. *Id.*

On May 17, 2022, plaintiff appealed Superintendent McGuiness's decision to the Central Office Review Committee ("CORC"). Compl. at 7. On June 3, 2022, plaintiff "sent another letter to defendant Farah, again asking if he was going to intervene and help resolve plaintiff's medical issue." *Id.* at 7-8. Defendant Farah did not respond to plaintiff's letter. *Id.* at 8.

As of July 29, 2022, the filing date of this lawsuit, "plaintiff's injury has not been treated and has gotten worse." Compl. at 8, 10. "Plaintiff's ability to perform life's basic daily functions[,]" such as "walking, bending down, and standing for very long[,] has been seriously limited and is extremely painful." *Id.* at 8.

Construed liberally, the complaint asserts Eighth Amendment medical indifference claims against defendants HLA-PE-WJN and Farah in their individual and official capacities. [2]

**\*4** Plaintiff seeks money damages and injunctive relief. Compl. at 10. For a complete statement of plaintiff's claims, reference is made to the complaint.

### C. Analysis

Plaintiff brings this action pursuant to 🔖 Section 1983, which establishes a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. "🔖 Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." 🔖 *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted).

It is well settled that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under 🔖 § 1983." *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir. 1991)); *Iqbal,* 556 U.S. at 676. "[A] 🔖 Section 1983 plaintiff must 'allege a

tangible connection between the acts of the defendant and the injuries suffered.' " *Austin v. Pappas,* No. 04-CV-7263, 2008 WL 857528, at \*2 (S.D.N.Y. Mar. 31, 2008) (quoting 🔖 *Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted). "[V]icarious liability is inapplicable to ... 🔖 § 1983 suits." 🔖 *Iqbal* 556 U.S. at 676.

### 1. Official Capacity Claims

The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity." U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); 🔖 *Hans v. Louisiana,* 134 U.S. 1, 10-21 (1890); 🔖 *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 267 (1997); 🔖 *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984). Eleventh Amendment immunity is lost only if Congress unequivocally abrogates states' immunity or a state expressly consents to suit. 🔖 *Gollomp v. Spitzer,* 568 F.3d 355, 365-66 (2d Cir. 2009). It is well-settled that Congress did not abrogate states' immunity through 🔖 Section 1983, *see* 🔖 *Quern v. Jordan,* 440 U.S. 332, 343-45 (1979), and that New York State has not waived its immunity from suit on the claims asserted in plaintiff's complaint. *See generally Trotman v. Palisades Interstate Park Comm'n,* 557 F.2d 35, 38-40 (2d Cir. 1977); *Dawkins v. State of New York,* No. 5:93-CV-1298 (RSP/GJD), 1996 WL 156764 at \*2 (N.D.N.Y. 1996).

The Eleventh Amendment bars suits for damages against state officials acting in their official capacities. *See* 🔖 *Kentucky v. Graham,* 473 U.S. 159, 169 (1985) (a claim for damages against state officials in their official capacity is considered to be a claim against the State and is therefore barred by the Eleventh Amendment); 🔖 *Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir. 1993) ("To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."); 🔖 *Severino v. Negron,* 996 F.2d

1439, 1441 (2d Cir. 1993) ("[I]t is clear that the Eleventh Amendment does not permit suit [under 🚩Section 1983] for money damages against state officials in their official capacities.").

**\*5** Accordingly, insofar as plaintiff seeks monetary damages under 🚩Section 1983 against either defendant in his official capacity, such claims are dismissed with prejudice pursuant to 28 U.S.C. § 1915A(b) as barred by the Eleventh Amendment. [3]

### 2. Eighth Amendment Claims

Claims that prison officials have intentionally disregarded an inmate's medical needs fall under the umbrella of protection from the imposition of cruel and unusual punishment afforded by the Eighth Amendment. 🚩Estelle v. Gamble, 429 U.S. 97, 102, 104 (1976). The Eighth Amendment prohibits punishment that involves the "unnecessary and wanton infliction of pain" and is incompatible with "the evolving standards of decency that mark the progress of a maturing society." Id.; see also 🚩Whitley v. Albers, 475 U.S. 312, 319 (1986) (citing, inter alia, Estelle). While the Eighth Amendment does not mandate comfortable prisons, neither does it tolerate inhumane treatment of those in confinement. 🚩Farmer v. Brennan, 511 U.S. 825, 832 (1994) (citing 🚩Rhodes v. Chapman, 452 U.S. 337, 349 (1981)).

"In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.' " 🚩Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (quoting 🚩Estelle, 429 U.S. at 104). "The standard of deliberate indifference includes both subjective and objective components." Id.

"First, the alleged deprivation must be, in objective terms, sufficiently serious." 🚩Chance, 143 F.3d at 702 (internal quotation marks and citations omitted). "Determining whether a deprivation is an objectively serious deprivation entails two inquiries[:] [1] ... whether the prisoner was actually deprived of adequate medical care[; and 2] ... whether the inadequacy in medical care is sufficiently serious."

🚩⚠️Salahuddin v. Goord, 467 F.3d 263, 279-80 (2d Cir. 2006) (citations omitted).

The first inquiry requires examining "whether the prisoner was actually deprived of adequate medical care." 🚩⚠️Salahuddin, 467 F.3d at 279. Prison officials who act "reasonably" in response to an inmate's health risk will not be found liable because the official's duty is only to provide "reasonable care." 🚩⚠️Id. at 279-80 (citing 🚩Farmer, 511 U.S. at 844-47).

**\*6** The second inquiry under the objective component of the claim is whether the purported inadequacy in the medical care is "sufficiently serious." 🚩⚠️Salahuddin, 467 F.3d at 280. If the "unreasonable care" consists of a failure to provide any treatment, then the court must examine whether the inmate's condition itself is "sufficiently serious." Id. (citing 🚩Smith v. Carpenter, 316 F.3d 178, 185-86 (2d Cir. 2003)). A condition is "sufficiently serious" in objective terms if it presents "a condition of urgency, one that may produce death, degeneration, or extreme pain exists." 🚩Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996).

"Where a plaintiff alleges that inadequate care was provided —instead of alleging a failure to provide any treatment— the inquiry focuses on 'the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract.' " 🚩Revels v. Corr. Med. Care, Inc., No. 9:17-CV-0088 (MAD/TWD), 2018 WL 1578157, at *4 (N.D.N.Y. Mar. 28, 2018) (quoting 🚩Smith v. Carpenter, 316 F.3d 178, 186 (2d Cir. 2003)); 🚩⚠️Salahuddin, 467 F.3d at 280 (noting that although courts speak of a "serious medical condition" as the basis for a constitutional claim, the seriousness of the condition is only one factor in determining whether the deprivation of adequate medical care is sufficiently serious to establish constitutional liability (citation omitted)).

With respect to the subjective component of a medical indifference claim, a plaintiff must show that the defendant "act[ed] with a sufficiently culpable state of mind," 🚩Chance, 143 F.3d at 702 (internal quotation marks and citations omitted); that is, the plaintiff must demonstrate that the defendant "kn[ew] of and disregard[ed] an excessive

risk to inmate health or safety." *Farmer*, 511 U.S. at 837; *see also* *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999) (With respect to the subjective element, a plaintiff must also demonstrate that defendant had "the necessary level of culpability, shown by actions characterized by 'wantonness.' "); *Hathaway*, 37 F.3d at 68 (holding that "the fact that [defendant] frequently examined [plaintiff does not] necessarily vindicate [defendant]" where "[t]he course of treatment [plaintiff] received clearly did not alleviate his suffering").

At this very early stage of the proceeding, and mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, *see e.g.* *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the Court finds that plaintiff's Eighth Amendment claim against Dr. HLA-PE-WJN survives sua sponte review and requires a response. In so ruling, the Court expresses no opinion as to whether this claim can withstand a properly filed dispositive motion.

The Court, however, reaches a different conclusion with respect to defendant Farah. The Second Circuit recently clarified that "there is no special rule for supervisory liability." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). Instead, "a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution.' " *Id.* (quoting *Iqbal*, 556 U.S. at 676). Thus, in the context of an Eighth Amendment claim against a supervisory official, a plaintiff must establish that the supervisory official himself "acted with deliberate indifference—meaning that [the official] personally knew of and disregarded an excessive risk to [the plaintiff's] health or safety." *Id.* at 619 (internal quotation marks and citation omitted).

*7 Here, the complaint alleges only that plaintiff sent letters to defendant Farah regarding Dr. HLA-PE-WJN's alleged wrongdoing, to which he never received a response. In light of *Tangreti*, these allegations are insufficient to plausibly suggest that defendant Farah was personally involved in the alleged wrongdoing. *See, e.g., Quirk v. DiFiore*, No. 20-CV-5027, 2022 WL 268976, at *3 (S.D.N.Y. Jan. 28, 2022) (dismissing Section 1983 claim against Chief Judge DiFiore where complaint alleged only that this official failed to respond to a letter sent to her by the plaintiff on one occasion, which

is insufficient to plausibly suggest her personal involvement in the alleged constitutional violation); *Tripathy v. Schneider*, No. 21-CV-6392, 2021 WL 4504461, at *3 (W.D.N.Y. Oct. 1, 2021) (dismissing Section 1983 claim against Commissioner of New York State Department of Corrections and Community Supervision and Governor of New York where complaint alleged only that these officials "failed to respond" to plaintiff's complaints of wrongdoing, noting that "the failure to respond to letters protesting unconstitutional actions and/or requesting an investigation is, without more, insufficient to establish personal involvement"); *Peck v. Cnty. of Onondaga, New York*, No. 5:21-CV-651, 2021 WL 3710546, at *10 (N.D.N.Y. Aug. 20, 2021) ("Peck's allegation that Conway failed to remedy the discriminatory conduct against her at the Sheriff's Office after June 18, 2020 essentially argues that he was deliberately indifferent to an ongoing violation.... Yet *Tangreti* demands more.... Plaintiff must allege that Conway actively participated in a constitutional violation, and this allegation does not further that end."), *reconsideration denied*, 563 F. Supp. 3d 18 (N.D.N.Y. 2021); *Fabrizio v. Smith*, No. 9:20-CV-0011 (GTS/ML), 2021 WL 2211206, at *10 (N.D.N.Y. Mar. 10, 2021) ("In the Complaint, Plaintiff alleged that Mauro and Smith were personally involved because they failed to remedy ongoing First Amendment violations after becoming aware of the retaliation through grievances and appeals.... In light of *Tangreti*, Plaintiff's attempt to plead personal involvement based upon the denial of a grievance and/or appeals, lacks merit because it does not plausibly suggest '[t]he factors necessary to establish' a First Amendment retaliation claim."), *report and recommendation adopted by* 2021 WL 2211023 (N.D.N.Y. June 1, 2021); *cf. McCrary v. Marks*, 836 Fed. App'x 73, 74 (2d Cir. 2021) (explaining that where "the most [plaintiff] alleged is that [defendant] received his letter and directed someone at the [agency] to respond to it[, t]hat is clearly not enough to state a claim").

Furthermore, even before *Tangreti*, the law in this Circuit was clear that a supervisory official such as defendant Farah could only be found to have been personally involved in a constitutional violation under a failure-to-remedy theory if the alleged wrongdoing was ongoing. *See, e.g., Rahman v. Fisher*, 607 F. Supp. 2d 580, 585 (S.D.N.Y. 2009) ("[A] supervisor may be liable for her failure to remedy a violation only in those circumstances where the violation is ongoing and the defendant has an opportunity to stop the violation after being informed of it."); *Harnett v. Barr*, 538 F. Supp. 2d 511, 524 (N.D.N.Y. 2008) ("If the official is confronted with

a violation that has already occurred and is not ongoing, then the official will not be found personally responsible for failing to 'remedy' a violation.").

In this case, it appears from the allegations in the complaint and documents attached thereto that the only ongoing medical issue about which plaintiff made defendant Farah aware was Dr. HLA-PE-WJN's alleged refusal to allow him to have a chair in his cell. [4] Moreover, the allegations in the complaint and documents attached thereto make clear that plaintiff's request for a chair in his cell was, at the time of filing, the subject of a grievance appeal. *See* Compl. at 7-8. Under such circumstances, even assuming defendant Farah received and read plaintiff's letters, and that *Tangreti* did not entirely eliminate supervisory liability under a failure-to-remedy theory, defendant Farah's alleged refusal to override the grievance process does not plausibly suggest that he acted with deliberate indifference to plaintiff's serious medical needs. *Cf.* 🔖 *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) ("We see no reason why [the Superintendent] should have intervened in advance of [a Tier III hearing] in which Colon was to be given the opportunity to substantiate the claim that he made in his letter. We therefore conclude that no reasonable jury could have held Senkowski liable."). [5]

**\*8**  Accordingly, plaintiff's Eighth Amendment claim against defendant Farah is dismissed pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

## III. SERVICE

Where a plaintiff has been authorized by the Court to proceed in forma pauperis ("IFP") pursuant to 🔖 28 U.S.C. § 1915, the U.S. Marshals Service is appointed to effect service of process of the summons and complaint on his behalf. *See* Fed. R. Civ. P. 4(c)(2) (U.S. Marshal must be appointed to serve process when plaintiff is authorized to proceed in forma pauperis); 🔖 28 U.S.C. § 1915(d) ("the officers of the court shall issue and serve all process and perform all duties in [in forma pauperis] cases."). In this case, plaintiff has not sought to proceed IFP. As a result, he is responsible for serving the summons and complaint on defendant HLA-PE-WJN.

Rule 4(c) of the Federal Rules of Civil Procedure provides that "[a]t the plaintiff's request, the court may order that service be made by a United States marshal or deputy marshal or by a person specially appointed by the court." Fed. R.

Civ. P. 4(c)(3). Therefore, in order to advance the disposition of this action, plaintiff is advised that he must do one of the following two things within thirty (30) days: (1) submit a signed and completed IFP application, certified by an appropriate official at his current facility, for the Court to consider in accordance with 🔖 28 U.S.C. § 1915; [6] or (2) submit a motion requesting service by the United States Marshal.

In the event plaintiff chooses the first option, the Court will evaluate whether the plaintiff has demonstrated sufficient economic need and, in addition, whether the "three strikes" provision of 🔖 Section 1915(g) bars him from proceeding IFP. If plaintiff's IFP application is granted, the U.S. Marshals Service will be appointed to effect service of process of the summons and complaint on plaintiff's behalf. *See* 🔖 28 U.S.C. § 1915(d) ("the officers of the court shall issue and serve all process and perform all duties in [IFP] cases."). [7]

If plaintiff chooses the second option, he is advised that his motion requesting service by the United States Marshal must be accompanied by (1) payment of the service fee due to the U.S. Marshal in full in advance by money order or certified check, [8] and (2) all necessary papers for service, including a completed U.S. Marshals Form (USM-285 Form) for defendant HLA-PE-WJN, and one copy of the complaint. The service documents and payment of the service fee should be sent to the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367, to be forwarded by the Clerk to the U.S. Marshal.

## IV. CONCLUSION
**\*9**  **WHEREFORE**, it is hereby

**ORDERED** that plaintiff's Eighth Amendment claim against Dr. HLA-PE-WJN **SURVIVES** sua sponte review; and it is further

**ORDERED** that plaintiff's 🔖 Section 1983 claims for money damages against the named defendants in their official capacity are **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915A(b) as barred by the Eleventh Amendment; [9] and it is further

**ORDERED** that plaintiff's remaining 🚩 Section 1983 claim is **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted; [10] and it is further

**ORDERED** that plaintiff must, **within thirty (30) days** from the date of the filing of this Decision and Order, either (1) submit a completed and signed IFP application which has been certified by an appropriate official at his facility, or (2) submit a motion requesting service by the United States Marshal along with the service fee and the completed forms necessary for service. The Clerk is directed to provide plaintiff with a blank IFP application for his completion; and it is further

**ORDERED** that all pleadings, motions and other documents relating to this action be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule

7.1 of the Northern District of New York in filing motions. All motions will be decided on submitted papers without oral argument unless otherwise ordered by the Court. **Plaintiff is also required to promptly notify, in writing, the Clerk's Office and all parties or their counsel of any change in plaintiff's address; his failure to do so may result in the dismissal of this action**; and it is further

**\*10 ORDERED** that the Clerk of the Court shall provide plaintiff with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in 🚩 *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam); and it is further

**ORDERED** that the Clerk shall serve a copy of this Decision and Order on plaintiff.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2022 WL 4236401

---

### Footnotes

1   Plaintiff has also attached exhibits to his complaint, which the Court has considered as part of its sufficiency review herein. *See* Dkt. No. 1-1.

2   Although the complaint also purports to assert claims under the Fourteenth Amendment, presumably based on Dr. HLA-PE-WJN's alleged creation of false statements in plaintiff's medical records, the Court does not construe the complaint to assert any cognizable 🚩 Section 1983 claim under this Amendment. *See, e.g.*, *Bloomfield v. Wurzberger*, No. 9:08-CV-0619 (GLS/RFT), 2009 WL 3335892, at *5 (N.D.N.Y. Oct. 15, 2009) (filing of a false entry in an inmate's medical records, without more, does not constitute a constitutional violation); *Cruz v. Lashway*, No. 9:06-CV-0867 (GTS/RFT), 2009 WL 1734549, at *8 (N.D.N.Y. June 18, 2009) (same); *Benitez v. Locastro*, No. 9:04-CV-0423 (NAM/RFT), 2008 WL 4767439, at *11 (N.D.N.Y. Oct. 29, 2008) (same).

3   In 🚩 *Ex Parte Young*, 209 U.S. 123 (1908), the Supreme Court established an exception to state sovereign immunity in federal actions where an individual brings an action seeking injunctive relief against a state official for an ongoing violation of law or the Constitution. Under the doctrine, a suit may proceed against a state official in his or her official capacity, notwithstanding the Eleventh Amendment, when a plaintiff, "(a) alleges an ongoing violation of federal law, and (b) seeks relief properly characterized as prospective." *See In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007) (quotations and citations omitted); *see also* 🚩 *Santiago v. New York State Dep't of Corr. Serv.*, 945 F.2d 25, 32 (2d Cir. 1991) (holding that such claims, however, cannot be brought directly against the state, or a state agency, but only against state officials in their official capacities).

The Court makes no determination, at this point, whether plaintiff's request for a "medical remedy" to address his "serious injury" constitutes prospective injunctive relief.

4    The first letter that plaintiff sent to defendant Farah requested intervention regarding Dr. HLA-PE-WJN's denial of his request for a chair in his cell, and expressed dissatisfaction with the treatment he had received, and Dr. HLA-PE-WJN making a false statement regarding his medical history in response to his request for the chair accommodation. Dkt. No. 1-1 at 14-15. Plaintiff also acknowledged in that letter that Dr. HLA-PE-WJN scheduled him for another x-ray of his hip. *Id.* at 15. In the second letter, the only relief plaintiff requested from defendant Farah was that he "grant [plaintiff's] medical permit for a chair." *Id.* at 16.

5    Insofar as the complaint may be construed to assert a claim based on inadequate medical treatment unrelated to the refusal to accommodate plaintiff's request for a chair, the first letter that plaintiff sent to defendant Farah indicated that Dr. HLA-PE-WJN scheduled him for another x-ray on April 7, 2022. Dkt. No. 1-1 at 14-15. In other words, assuming defendant Farah received and read plaintiff's letter, he became aware only that plaintiff was dissatisfied with the course of treatment, as opposed to that plaintiff was not receiving any treatment. Furthermore, plaintiff does not allege that defendant Farah is a medical professional. Thus, defendant Farah's decision to defer to the opinion of Dr. HLA-PE-WJN regarding a recommended course of treatment also does not, without more, plausibly suggest deliberate indifference. *See, e.g.,* 🚩 *Brock v. Wright,* 315 F.3d 158, 164 (2d Cir. 2003) (non-medical professional's "automatic and complete deference" to complained-of medical decision "is not, by itself, sufficient evidence" of deliberate indifference); *Feliciano v. Anderson,* No. 15-CV-4106, 2017 WL 1189747, at *14 (S.D.N.Y. Mar. 30, 2017) (plaintiff failed to state a claim with respect to correctional officer because "[c]orrections officers who defer to the judgment of medical professionals are only liable if the plaintiff pleads facts demonstrating that the 'nonmedical defendants should have challenged the medical professionals' decisions' " (quoting *Smith v. Wilson,* No. 9:12-CV-01152, 2013 WL 5466857, at *9 (N.D.N.Y. Sept. 30, 2013))); *Whittle v. Ulloa,* No. 15-CV-8875, 2016 WL 7351895, at *5 (S.D.N.Y. Dec. 19, 2016) ("[A] non-medical administrator's pro forma denial of a grievance based on deference to the opinions of medical staff does not establish that non-medical administrator's personal involvement.").

6    Certified account statements may be submitted in lieu of the completed certificate portion of the IFP application. *See* 🚩 28 U.S.C. § 1915(a)(2).

7    If the IFP application is denied, plaintiff will be responsible for serving the summons and complaint.

8    Payment in cash or by personal check is not acceptable. For service by mail, the fee is $8.00 per summons and complaint. The cost of service by mail on the remaining defendant in this action is therefore $8.00. Plaintiff is also advised that, if initial service is unsuccessful, he will be required to pay the U.S. Marshal any additional fee, also in advance, for subsequent service attempts according to the fee schedule set by the U.S. Marshal.

9    Generally, when a district court dismisses a pro se action sua sponte, the plaintiff will be allowed to amend his action. *See* 🚩 *Gomez v. USAA Fed. Savings Bank,* 171 F.3d 794, 796 (2d Cir. 1999). However, an opportunity to amend is not required where the defects in the plaintiff's claims are substantive rather than merely formal, such that any amendment would be futile. 🚩 *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir. 2000); *see also Pucci v. Brown,* 423 Fed. App'x 77, 78 (2d Cir. 2011). Because these claims are barred by the Eleventh Amendment, leave to amend to would be futile.

10   Should plaintiff seek to pursue this claim further, he must file an amended complaint. Any amended complaint, which shall supersede and replace the original complaint in its entirety, must allege claims of misconduct or wrongdoing against each named defendant which plaintiff has a legal right to pursue, and over which jurisdiction may properly be exercised. Any amended complaint filed by plaintiff must also comply with the

pleading requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure. Plaintiff's deadline to amend his pleading as a matter of course is set forth in Rule 15(a) of the Federal Rules of Civil Procedure.

---

**End of Document**                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.