**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

JUSTIN JONES,

                                   Plaintiff,                  5:22-cv-1188
                                                         (ECC/ML)

v.

DALE A. BUCK, JR., also known as John Doe
#1 State Police Officer K-9 Handler, and
THOMAS A. GIANNETTINO, also known as
John Doe #2 State Police Officer,

                                   Defendants.

---

Justin Jones, *pro se Plaintiff*
Aimee Cowan, Asst. Att'y General, *for Defendants*

**Hon. Elizabeth C. Coombe, United States District Judge:**

### MEMORANDUM-DECISION AND ORDER

Pro se plaintiff Justin Jones brings this action pursuant to 42 U.S.C. § 1983 against

Defendants Dale A. Buck, Jr. and Thomas A. Giannettino, asserting claims for excessive force and

failure to intervene in violation of his Fourth Amendment rights. Dkt. No. 1 (Complaint). Presently

before the Court is Defendants' motion for summary judgment pursuant to Federal Rule of Civil

Procedure 56. Dkt. No. 72. The motion is fully briefed. *See* Dkt. Nos. 73, 79, 84. For the following

reasons, Defendants' motion for summary judgment is denied.

## I.       BACKGROUND[1]

On February 24, 2021, Plaintiff and his girlfriend, Stacy Earl, were using controlled

substances together and arguing. Dkt. No. 72-3 ¶ 1; Dkt. No. 72-5 at 34, 37-38. As of that date,

---

[1] These facts are drawn from Defendants' Statement of Material Facts Not in Dispute pursuant to
Local Rule 56.1, Dkt. No. 72-3, to the extent those facts are well-supported by pinpoint citations
to the record, and the exhibits the parties have submitted. Disputed facts are noted. The facts are

Ms. Earl had an Order of Protection against Plaintiff in place. Dkt. No. 72-3 ¶ 2. Plaintiff and Ms. Earl continued arguing that evening while at Walmart in Auburn, New York and, at some point, Ms. Earl exited the vehicle and ran into a Kwik Fill gas station, where she called the police. *Id.* at ¶¶ 10-13.[2]

Plaintiff left the Kwik Fill but later returned. *Id.* at ¶ 19. As he returned, Plaintiff saw a police vehicle at the Kwik Fill and, knowing that he did not have a valid driver's license, continued driving by. *Id.* at ¶ 20; Dkt. No. 72-5 at 48. Officers from the Auburn Police Department (APD) began following Plaintiff. Dkt. No. 72-3 at ¶¶ 22, 25, 27-29. At approximately 11:23 p.m., Defendant New York State Trooper Thomas Giannettino was notified via 911 dispatch that APD officers had responded to a Kwik Fill gas station and that Plaintiff had been identified "as the suspect in a domestic dispute that took place" there. Dkt. No. 72-15 ¶ 5. The dispatch further stated that Plaintiff had fled the scene in a Chevrolet Trail Blazer with a dealer license plate. *Id.* Trooper Giannettino thereafter observed this vehicle and proceeded to follow it in his patrol vehicle. *Id.* at ¶ 6. Trooper Giannettino observed the vehicle drive through a red light; a "vehicle pursuit was initiated" that lasted approximately "15.4 miles" and "25 minutes." *Id.*

At approximately 11:40 p.m., Defendant New York State Trooper Dale Buck, Jr. responded to "assist" Trooper Giannettino with the vehicle pursuit. Dkt. No. 72-12 ¶ 7. Trooper Buck was aware from the 911 dispatcher that the "operator of the vehicle was involved in a domestic incident and that the Auburn Police Department was investigating." *Id.* at ¶ 7. APD informed patrol officers

---

construed in the light most favorable to Plaintiff as the non-moving party. *Gilles v. Repicky*, 511 F.3d 239, 243 (2d Cir. 2007).

[2] Defendants' statement of material facts contains more detailed information about Plaintiff and Ms. Earl's drug use and altercation on February 24, 2021. There is no record evidence to suggest, however, that Defendants were made aware of this information before Plaintiff's arrest. The information therefore necessarily could not have influenced the perspective of a reasonable officer on the scene and is not material to Plaintiff's claims of excessive force and failure to intervene.

that the suspect was Plaintiff, and that Plaintiff "violated a full stay away order of protection and may be in possession of a knife." *Id.* at ¶ 8.

The Cayuga County Sheriff's Office deployed "spike strips" on two occasions during the vehicle pursuit, eventually deflating all four tires on Plaintiff's vehicle. Dkt. No. 72-15 ¶ 7. According to Trooper Giannettino, Plaintiff reached speeds over 80 miles per hour prior to deployment of the spike strips. *Id.* Plaintiff, however, asserts that he was going "about thirty miles an hour" and "wasn't trying to do a high-speed chase." Dkt. No. 72-5 at 57. Plaintiff continued driving on the deflated tires for a few minutes but eventually stopped the car and "veer[ed] off the road into the snowbank." *Id.* at 61-63. This occurred on State Route 34B in the Town of Scipio, a rural and unlit area. Dkt. No. 72-3 ¶¶ 54, 64.

The parties dispute what occurred after Plaintiff's vehicle went off the road. According to Plaintiff, he got out of the SUV through the passenger side door as soon as it stopped and "ran." Dkt. No. 72-5 at 65-66. Plaintiff made it about "fifteen feet" from the car before he "couldn't run" anymore in the foot-deep snow. *Id.* at 66; *see id.* at 72 (testifying he made it ten feet from the car). At this point officers told Plaintiff to stop, but he was "already stopped." *Id.* at 72. Plaintiff heard the officers tell him to stop or "[they're] going to let the canine go" three times and, although Plaintiff was "already not even moving," they "let the dog go." *Id.* at 74, 75. The officers "let [the dog] sit there and bite [his] leg," resulting in fourteen bite marks on his left leg. *Id.*; *see id.* at 81 ("[T]hey literally watched the dog bite me."). Plaintiff testified that the dog continued biting him and an officer continued "kneeling on [his] back" even after he was handcuffed. *Id.* at 84, 90. Plaintiff testified that a trooper "lift[ed] [his] knee back up and then put[] [his] weight back down" two or three times, resulting in a "bruise on [Plaintiff's] side." *Id.* at 91-92.

3

Trooper Buck asserts that, once Plaintiff's vehicle came to a stop off the road, he retrieved his partner, K-9 Rylo, and "began giving verbal commands to plaintiff while he was still located inside the stopped vehicle." Dkt. No. 72-12 ¶ 9. Trooper Buck announced himself as NYSP Canine and directed Plaintiff to show his hands, otherwise Trooper Buck would release the K-9. *Id.* Plaintiff "disregarded these commands" and exited the vehicle from the passenger side "with a dark, unidentified object in his hand." *Id.*; *accord* Dkt. No. 72-15 ¶ 8; *see also* Dkt. No. 72-5 at 69-70 (Plaintiff testifying that he may have had a flashlight or "black bag of needles" in his hand or pocket when he exited the car). Trooper Buck commanded Plaintiff to drop the object and not move, but Plaintiff "failed to comply" and ran from the vehicle into the snow-covered field. Dkt. No. 72-12 ¶ 9. Trooper Giannettino also gave Plaintiff "verbal commands to stop running and to show [] his hands." Dkt. No. 72-15 ¶ 8. Trooper Buck "again gave 'State Police Canine Announcements,'" during which he directed Plaintiff to show his hands and stop running, otherwise the K-9 would be released. Dkt. No. 72-12 ¶ 10. Because Plaintiff failed to comply, Trooper Buck "released K-9 Rylo, who ran approximately 25-30 yards and apprehended plaintiff." *Id.*

K-9 Rylo initially engaged Plaintiff on his left thigh. Dkt. No. 72-3 ¶ 82. According to Trooper Buck, Plaintiff fell to the ground and rolled over, placing K-9 Rylo's "neck in an awkward position" and so, in accordance with his training, K-9 Rylo "disengaged from plaintiff's thigh and reengaged on plaintiff's left calf." Dkt. No. 72-12 ¶ 11 (explaining that K-9 Rylo was trained and required to "maintain his hold on the suspect until the suspect is handcuffed and no longer a threat").[3] It took "approximately 25-30 seconds for K-9 Rylo to apprehend plaintiff and for

---

[3] Plaintiff asserts that he "fell straight down" and "never rolled over" onto K-9 Rylo. Dkt. No. 72-5 at 74.

4

Trooper Buck to arrive at their location in the field," at which point Trooper Buck determined that the object in Plaintiff's hand was a flashlight and removed it. Dkt. No. 72-3 ¶¶ 85-87.

Trooper Giannettino handcuffed Plaintiff and patted him down to ensure he did not have any weapons. Dkt. No. 72-15 ¶ 10. Trooper Giannettino does "not recall" whether he placed his knee on Plaintiff's back but asserts that it would have been within NYSP policy to do so to ensure Plaintiff could be handcuffed. *Id.* According to Defendants, K-9 Rylo was "immediately disengaged" once Plaintiff was "handcuffed and no longer a threat." Dkt. No. 72-12 ¶ 12; Dkt. No. 72-15 ¶ 10.

Plaintiff was then transported to the hospital for treatment and received approximately "seventy to eighty staples and nine stitches" in his left leg. Dkt. No. 72-5 at 95-96.

## II.    LEGAL STANDARD

Under Rule 56(a), summary judgment may be granted only if all the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*). The movant may meet this burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *see also Selevan v. N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013) (explaining that summary judgment is appropriate where the nonmoving party fails to "'come forth

5

with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on' an essential element of a claim" (quoting *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 509 (2d Cir. 2010))).

If the moving party meets this burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248, 250; *see also Celotex*, 477 U.S. at 323-24; *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). Still, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986) (quoting *Quarles v. Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985)). Furthermore, "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)).

Where the plaintiff proceeds pro se, the Court must "read his submissions liberally and interpret them 'to raise the strongest arguments that they suggest.'" *Hennessy v. Aiossa*, No. 19-cv-1027 (BKS/DJS), 2021 WL 3792966, at *3 (N.D.N.Y. Aug. 26, 2021) (quoting *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999)). However, a "pro se party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Id.* (citations omitted).

### III.   DISCUSSION

On initial review, Plaintiff's Complaint was construed to assert claims under the Fourth Amendment for excessive force and failure to intervene against Defendants. *See* Dkt. Nos. 10, 12. Defendants move for summary judgment on all of Plaintiff's claims.

### A.   Plaintiff's Failure to Respond to Defendants' Statement of Material Facts

In support of their motion for summary judgment, Defendants submitted a Statement of Material Facts Not in Dispute in accordance with Local Rule 56.1. Dkt. No. 72-3. Defendants also notified Plaintiff of the consequences of failing to respond to a summary judgment. Dkt. No. 72-1. This notification advised Plaintiff that he was required to respond to Defendants' statement of material facts and that, if he did not, the Court may deem Defendants' factual statements to be true. *Id.* Plaintiff filed a five-page handwritten opposition to Defendants' motion, along with some documentary support, but did not separately respond to Defendants' statement of material facts. *See* Dkt. No. 79; Local Rule 56.1(b). Defendants therefore request that the Court deem the facts in their statement "as admitted." Dkt. No. 84 at 5-7.

Local Rule 56.1 provides that the Court "may deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert." Local Rule 56.1(b) (underlining omitted). Thus, where a party fails to respond to the movant's statement of material facts, the Court may accept those facts as true to the extent they are supported by evidence in the record, and the nonmovant, if proceeding pro se, has been specifically advised of the possible consequences of failing to respond to the motion. *See Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). The Court has "broad discretion" in determining whether to overlook a "failure to comply with local rules," and has the discretion to "conduct an assiduous review of the entire record even where one of the parties has failed to file [a Rule 56.1] statement." *Curtis v. Bola*, No. 15-cv-718 (GLS/TWD), 2016 WL 7735755, at *7

(N.D.N.Y. Nov. 1, 2026) (citations omitted), *report and recommendation adopted*, 2017 WL 120945 (N.D.N.Y. Jan. 12, 2017). In deference to Plaintiff's pro se status, the Court has opted to review the entire summary judgment record, which includes Plaintiff's deposition testimony, to determine if there are material facts in dispute.

### B. Excessive Force

"[A]ll claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis omitted). Whether the force used by an arresting officer was excessive is determined by an objective balancing test where "the nature and quality of the intrusion on the plaintiff's Fourth Amendment interests" is balanced "against the countervailing governmental interests at stake." *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010) (citation omitted).

At least three factors guide this determination: "(1) the nature and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Id.* (citing *Graham*, 490 U.S. at 396). This requires analysis of the totality of the circumstances, and the "history of the interaction, as well as other past circumstances known to the officer . . . may inform the reasonableness of the use of force." *Barnes v. Felix*, 605 U.S. 73, 80-81 (2025).

Nonetheless, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. Moreover, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a

particular situation." *Id.* at 396-97. "Such calculus accounts for the well-worn axiom that '[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment.'" *White v. LaRusch*, No. 18-cv-1245, 2022 WL 4287661, at *9 (W.D.N.Y. June 1, 2022), *report and recommendation adopted*, 2022 WL 3655184 (W.D.N.Y. Aug. 25, 2022) (quoting *Graham*, 490 U.S. at 396).

"Given the fact-specific nature of the inquiry, granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 123 (2d Cir. 2004) (citation omitted).

### 1.      Trooper Buck

Defendants argue that Trooper Buck is entitled to summary judgment on Plaintiff's excessive force claim because it was objectively reasonable for Trooper Buck to deploy K-9 Rylo to secure Plaintiff's apprehension and continue K-9 Rylo's engagement until Plaintiff was handcuffed, and because Trooper Buck is entitled to qualified immunity. Dkt. No. 72-2 at 14-20. Plaintiff's opposition, read liberally and interpreted to raise the strongest arguments it suggests, disputes certain of Defendants' factual assertions and contends that (1) Plaintiff never rolled over or moved onto K-9 Rylo; (2) Defendants never stated that Trooper Buck fell and injured himself before he reached Plaintiff, which may explain why K-9 Rylo was allowed to continue biting him; (3) Plaintiff "was in handcuffs while [K-9 Rylo] was still chewing on his leg;" and (4) K-9 Rylo was "chewing" and not merely "hold[ing]" his leg. *See* Dkt. No. 79.[4]

---

[4] Much of Plaintiff's opposition takes issue with the photos he did (or did not) receive from Defendants and references a photograph of his leg that he claims was taken without permission while he was in the hospital and sent to his ex-wife. *See generally* Dkt. No. 79. To the extent Plaintiff challenges Defendants' compliance with their discovery obligations, the time for him to

The Court concludes that genuine disputes of material fact preclude summary judgment in Trooper Buck's favor on Plaintiff's excessive force claim. It is undisputed that Defendants had been informed that Plaintiff had been involved in a "domestic incident," had "violated a full stay away order of protection," and "may be in possession of a knife." Dkt. No. 72-12 ¶¶ 7-8; Dkt. No. 72-15 ¶ 5. They were also aware that Plaintiff had led multiple law enforcement agencies on a vehicle pursuit lasting more than 15 miles, requiring spike strips to eventually disable his vehicle. *See* Dkt. No. 72-3 ¶¶ 29-54. Defendants also assert that they observed Plaintiff with a dark object in his hand when he exited the vehicle, *id.* at ¶ 60, although Plaintiff's testimony is equivocal on that point. These facts may, as Defendants contend, weigh in favor of finding Trooper Buck's use of force objectively reasonable. But Plaintiff's version of events diverges from Defendants' version in two crucial respects.

First, Plaintiff testified at his deposition that he made it approximately 10 to 15 feet from his vehicle before he "couldn't run" in the snow anymore and "stopped." Dkt. No. 72-5 at 66; *see id.* at 72-73 (testifying that the Troopers told him to stop but he "was already stopped").[5] Thus, viewing the evidence in the light most favorable to Plaintiff as the non-movant, a jury could reasonably conclude that he had ceased fleeing from officers before Trooper Buck released K-9 Rylo. Second, the parties dispute the length of time K-9 Rylo was deployed on Plaintiff. According to Defendants, it "took approximately 25-30 seconds for K-9 Rylo to apprehend plaintiff and for Trooper Buck to arrive at their location" and K-9 Rylo was "immediately disengaged" once

---

raise the issue has long since passed. In any event, the existence of a photograph taken of Plaintiff after the incident is not material to the legal issues before the Court on this motion.

[5] Defendants argue in reply that Plaintiff does not address the discrepancy between his deposition testimony and his complaint, in which he alleges: "When the K-9 reached the plaintiff, the plaintiff stopped because he did not want to get bit." Dkt. No. 1 at 2; *see* Dkt. No. 84 at 8. But the Court must view all the evidence in the light most favorable to Plaintiff, including his more specific deposition testimony.

Plaintiff was "handcuffed and no longer a threat." *See* Dkt. No. 72-3 ¶¶ 85, 89. But Plaintiff testified repeatedly that K-9 Rylo continued biting his leg even after he was handcuffed and that this lasted for a period of minutes. *See, e.g.*, Dkt. No. 72-5 at 74 ("[T]hey literally let [K-9 Rylo] sit there and bite my leg."), 82 (testifying that K-9 Rylo disengaged "[o]nce they picked [him] up"), 84 ("I was still in handcuffs . . . while the dog [was] still biting me."), 85 ("[T]he dog was still biting me while I'm in handcuffs."), 90 ("I was in handcuffs fast. . . . [A]fter I was in handcuffs, that's when the dog started biting me more and more and more and more."), 91 (testifying that "probably at least four or five minutes" passed from being put into handcuffs until he was stood up). Plaintiff asserts that he had fourteen bite marks on his left leg and received "seventy to eighty staples and nine stitches." *Id.* at 74, 75, 95-96. Defendants fail to address Plaintiff's account, which he raised in opposition, *see* Dkt. No. 79 at 3, 5, or the extent of his injuries.

Defendants have not cited authority which supports their entitlement to judgment as a matter of law on the excessive force claim against Trooper Buck on Plaintiff's facts, and the cases they cite are distinguishable. Defendants cite *Nuzzo v. Devine*, where the court concluded that the deployment by two troopers (who were not defendants) of their police dogs to apprehend the plaintiff was not objectively unreasonable. 494 F. Supp. 3d 232, 237 (D. Conn. 2020). But *Nuzzo* was decided after a bench trial, and the court expressly found the facts to be those "adduced by the testimony of the defendants and their witnesses." *Id.* at 236. At summary judgment the Court may not resolve factual disputes or weigh the parties' credibility. *See also Fink v. Catalano*, No. 20-cv-344 (TJM/TWD), 2023 WL 2346266, at *5 (N.D.N.Y. Mar. 3, 2023) (holding, on unopposed summary judgment motion, that use of police dog to bring the plaintiff to the ground and

11

immediately disengaging the dog was objectively reasonable where the plaintiff "actively refuse[d] arrest and engage[d] in threatening behavior" and "disregarded clear warnings").

Indeed, courts routinely deny motions for summary judgment on excessive force claims where the parties dispute what occurred, including in situations involving the deployment of police dogs. In *George v. Town of East Hartford*, for example, the plaintiff testified that at least two officers were punching him before he "felt a dog bite his leg" and that, when the plaintiff succumbed to the pain and blood loss, the dog "was allowed to continue to bite him even though he offered no further resistance." No. 97-cv-1958, 2000 WL 436605, at *1 (D. Conn. Mar. 13, 2000). The officers, by contrast, asserted that "the dog was ordered to release the plaintiff as soon as [an officer] was able to handcuff him." *Id.* at *1 n.2. Accepting the plaintiff's version of facts as true, the court concluded that a jury could reasonably return a verdict for him on his excessive force claims and denied summary judgment. *Id.*; *see also Gonzalez v. City of Rochester*, No. 16-cv-6652, 2020 WL 5032026, at *7 (W.D.N.Y. Aug. 26, 2020) (denying summary judgment on excessive force claim where there were "stark issues of fact concerning [the officer's] release of the dog, and the events that ensued immediately thereafter"); *Raffone v. Nugent*, No. 13-cv-1589, 2016 WL 199399, at *4 (D. Conn. Jan. 15, 2016) (denying summary judgment on excessive force claim where there was a "genuine issue of fact regarding the circumstances under which the order to attack was given" to the police dog); *Smith v. P.O. Canine Dog Chas*, No. 02-6240, 2004 WL 2202564, at *13 (S.D.N.Y. Sept. 28, 2004) (finding a material issue of fact as to the reasonableness of a canine handler's actions in "light of [the plaintiff's and the officer's] substantially different versions of events").

Trooper Buck also argues that, in the alternative, he is entitled to qualified immunity. "When a plaintiff shows facts making out a violation of a constitutional right, a defendant may

12

establish the affirmative defense of qualified immunity by demonstrating that (1) the right was not

'clearly established' or (2) even if the right was 'clearly established,' 'it was objectively reasonable

for the officer to believe the conduct at issue was lawful.'" *Elder v. McCarthy*, 967 F.3d 113, 131

(2d Cir. 2020) (citation omitted). Officers "receive qualified immunity unless they could have

'read' the relevant precedent beforehand and 'know[n]' that it proscribed their specific conduct."

*Zorn v. Linton*, 607 U.S. ---, 146 S. Ct. 926, 930 (2026) (citation omitted). To demonstrate

entitlement to summary judgment based on qualified immunity, a defendant must:

> adduce[] sufficient facts such that no reasonable jury, looking at the
> evidence in the light most favorable to, and drawing all inferences
> most favorable to, the plaintiff[], could conclude that it was
> objectively unreasonable for the defendant to believe that he was
> acting in a fashion that did not clearly violate an established
> federally protected right.

*Hartline v. Gallo*, 546 F.3d 95, 102 (2d Cir. 2008) (brackets and internal quotation marks omitted)

(citing *Robison v. Via*, 821 F.2d 913, 921 (2d Cir. 1997)). "Summary judgment on qualified

immunity grounds is not appropriate when there are facts in dispute that are material to a

determination of reasonableness." *Bell v. Saunders*, No. 20-cv-256 (BKS/TWD), 2024 WL

5078136, at *8 (N.D.N.Y. Dec. 11, 2024) (quoting *Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir.

1999)).

Here, in light of the genuine disputes of material fact that are relevant to assessing the

reasonableness of Trooper Buck's conduct, including whether Plaintiff had stopped fleeing before

K-9 Rylo was released and whether K-9 Rylo continued biting Plaintiff after he was handcuffed,

Trooper Buck has not demonstrated his entitlement to qualified immunity at this stage. *See, e.g.*,

*Smith*, 2004 WL 2202564, at *14 (concluding that canine officer would not be entitled to qualified

immunity on excessive force "for the same reasons" he would not be entitled to summary judgment

13

on the merits). No reasonable officer could have believed that allowing K-9 Rylo to "chew" Plaintiff's legs for minutes after he was handcuffed and no longer a threat was lawful.[6]

Accordingly, Trooper Buck is not entitled to summary judgment on Plaintiff's excessive force claim.

### 2.    Trooper Giannettino

Defendants argue that Trooper Giannettino is entitled to summary judgment on Plaintiff's excessive force claim because Plaintiff cannot positively identify which officer placed a knee on his back and because the amount of force used was *de minimis* and otherwise not unreasonable as a matter of law. Dkt. No. 72-2 at 20-26. Plaintiff's opposition mentions a "knee in [his] back pushing down" but otherwise does not address the excessive force claim against Trooper Giannettino. Dkt. No. 79 at 5. Even to the extent Plaintiff's opposition could be read to not address Defendants' arguments with respect to the excessive force claim against Trooper Giannettino, in light of his pro se status, the Court nonetheless must "examine every claim . . . with a view to determining whether summary judgment is legally and factually appropriate." *Jackson v. Federal Exp.*, 766 F.3d 189, 198 (2d Cir. 2014). Upon review of the summary judgment record, the Court concludes that factual disputes preclude summary judgment in Trooper Giannettino's favor on the excessive force claim.

---

[6] *McKinney v. City of Middletown*, 49 F.4th 730 (2d Cir. 2022), is not to the contrary. There, the Second Circuit held that the defendant officers were entitled to qualified immunity because the plaintiff had "not shown that police officers violate clearly established law by allowing a canine bite to continue until a previously violent suspect can be secured." *Id.* at 741-42 ("McKinney has not shown that it is a violation of clearly established law for the police to ensure that a violent suspect has been secured before *withdrawing* the significant force required to subdue the suspect."). Here, Plaintiff's testimony is that K-9 Rylo continued biting him for minutes after he was already handcuffed and secured.

As an initial matter, it is not necessarily the case that Plaintiff must positively identify which officer allegedly used excessive force against him to defeat a summary judgment motion. *See John v. City of New York*, 406 F. Supp. 3d 240, 245 (E.D.N.Y. 2017) (citations omitted). Rather, because he alleges that more than one officer was involved in his arrest, he "need only produce evidence that the Officer Defendants were present on the night in question and participated in his arrest." *Id.* (citations omitted). Here, it is undisputed that Trooper Giannettino was present, involved in Plaintiff's arrest, and the officer who handcuffed Plaintiff. *See* Dkt. No. 72-3 ¶ 88; *see also* Dkt. No. 72-5 at 80 (Plaintiff testifying that he does not think APD officers "even stepped out in the field"). Accordingly, Trooper Giannettino is not entitled to summary judgment on this basis.

Although Defendants characterize the force at issue as "a knee placed on plaintiff's back while he was being handcuffed," *e.g.*, Dkt. No. 72-2 at 21, Plaintiff testified at his deposition that the officer had a knee on his back for a "good two minutes" *after* Plaintiff was already handcuffed. Dkt. No. 72-5 at 89 ("I don't know why he had to kneel on my back when I'm already in handcuffs."). Plaintiff further asserts that the officer was "letting pressure off, putting pressure back on" with his knee two or three times and that he had a bruise on his side afterwards. *Id.* at 91, 92. Viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could conclude that this use of force, which occurred after Plaintiff was secured and while a police dog was engaged on his leg, was entirely gratuitous and therefore objectively unreasonable. Courts in this Circuit "have concluded that 'even a minor use of force' is unreasonable when a suspect has already been restrained or handcuffed" and thus deny summary judgment where a plaintiff "alleges that he was subject to unnecessary force such as 'yanking' an arm after he or she was restrained in handcuffs." *Scoma v. City of New York*, No. 16-cv-6693, 2021 WL 230295, at *10 (E.D.N.Y. Jan. 22, 2021) (citations omitted); *see also McClendon v. County of Nassau*, No. 11-cv-190, 2012 WL

15

4849144, at *9 (E.D.N.Y. Oct. 11, 2012) ("Unnecessary blows inflicted while an arrestee is in handcuffs may be sufficient to sustain an excessive force claim.") (collecting cases); *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004) ("[W]e have permitted a plaintiff's claim to survive summary judgment on allegations that, during the course of an arrest, a police officer twisted her arm, 'yanked her' and threw her up against a car, causing only bruising.").

To the extent Defendants argue that Plaintiff's excessive force claim against Trooper Giannettino fails as a matter of law because Plaintiff suffered only the *de minimis* injury of bruising, the Court disagrees. It is well-established that, "although the absence of significant injury is relevant to the question of excessive force, it is not dispositive under a Fourth Amendment analysis." *Jones v. Treubig*, 963 F.3d 214, 239 (2d Cir. 2020) (citations omitted); *see also Wilkins v. Gaddy*, 559 U.S. 34, 34 (2010) (noting, in Eighth Amendment context, that excessive force claims must be decided "based on the nature of the force rather than the extent of the injury"). Furthermore, "district courts within the Second Circuit have held that force that merely causes *de minimis* injury can be excessive if 'gratuitous.'" *Jarvis v. Knapp*, No. 25-cv-1167 (MAD/MJK), 2026 WL 1139372, at *4 (N.D.N.Y. Apr. 28, 2026) (citation omitted).[7]

Finally, Trooper Giannettino has not demonstrated his entitlement to qualified immunity at this stage. Although Defendants argue that a "reasonable officer in [his] circumstances could have determined that the challenged conduct, placing a knee on a fleeing suspect's back while

---

[7] That there is evidence from which a reasonable jury could conclude that Trooper Giannettino used force gratuitously on Plaintiff after handcuffing distinguishes this case from many of the cases Defendants cite. To the extent any of these cases state or suggest that a *de minimis* injury, in and of itself, warrants summary judgment on an excessive force claim, the Court respectfully disagrees for the reasons already stated. Furthermore, Defendants' argument that Plaintiff's medical records contradict his allegation of sustaining a bruise, Dkt. No. 72-2 at 24, is not persuasive. The "medical records" Defendants cite are in reality two NYSP "Medical Services Deposition" forms. Dkt. No. 72-11 at 10-11.

16

handcuffing [him], was lawful," Dkt. No. 72-2 at 25, they do not address qualified immunity as it relates to the alleged use of gratuitous and unnecessary force after Plaintiff was handcuffed. *See Lennox v. Miller*, 968 F.3d 150, 157 (2d Cir. 2020) (noting the "well established principle that the use of entirely gratuitous force is unreasonable and therefore excessive") (quoting *Tracy*, 623 F.3d at 99 n.5) (internal quotation marks omitted).

Accordingly, Trooper Giannettino is not entitled to summary judgment on Plaintiff's excessive force claim.

### C.    Failure to Intervene

"It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Sloley v. VanBramer*, 945 F.3d 30, 46-47 (2d Cir. 2019) (citation omitted). To establish a claim for failure to intervene, a plaintiff must show that "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Williams v. DiPuccio*, No. 19-cv-995 (BKS/MJK), 2024 WL 1765558, at *3 (N.D.N.Y. Apr. 24, 2024) (citation omitted). "Whether the officer had a 'realistic opportunity' to intervene is normally a question for the jury, unless, 'considering all the evidence, a reasonable jury could not possibly conclude otherwise.'" *Sloley*, 945 F.3d at 47 (quoting *Terebesi v. Torreso*, 764 F.3d 217, 244 (2d Cir. 2014)).

Defendants argue as a threshold matter that the failure to intervene claims should be dismissed because they cannot be liable both for using excessive force and for failing to prevent that use of excessive force. Dkt. No. 72-2 at 27. Although this is correct, the Federal Rules of Civil Procedure "recognize both that a party may 'set out two or more statements of a claim . . . alternatively' and that '[a] party may state as many claims . . . as it has, regardless of consistency'

17

between them." *Watson v. City of Kingston-Kingston Police Dep't*, No. 15-cv-1356 (BKS/DEP), 2018 WL 4509488, at *4 (N.D.N.Y. Sept. 19, 2018) (quoting Fed. R. Civ. P. 8(d)(2), (3)). District courts therefore "have allowed excessive force and failure to intervene claims to proceed in the alternative beyond the summary judgment stage." *Franco v. City of Syracuse*, No. 16-cv-634 (FJS/TWD), 2019 WL 1410348, at *4 (N.D.N.Y. Mar. 28, 2019) (citation omitted).

### 1.    Trooper Buck

Defendants argue that Trooper Buck is entitled to summary judgment on Plaintiff's failure to intervene claim premised on an officer pressing a knee into his back because Plaintiff "cannot set forth any admissible evidence" supporting the claim's elements and because Trooper Buck is entitled to qualified immunity. Dkt. No. 72-2 at 27-29. Although Trooper Buck denies observing any force used on Plaintiff "other than observing Trooper Giannettino handcuffing" him, Dkt. No. 72-12 ¶ 18, it is undisputed that Trooper Buck was in close proximity to Plaintiff when he was taken into custody and shortly thereafter. Viewing the evidence in the light most favorable to Plaintiff, therefore, the Court concludes there is a triable issue of fact as to whether Trooper Buck observed force being used on Plaintiff's back after he was restrained and whether he had a reasonable opportunity to intervene and prevent the harm. *See, e.g.*, *Newkirk v. County of Suffolk*, No. 17-cv-2960, 2022 WL 824137, at *5 (E.D.N.Y. Mar. 18, 2022) (denying summary judgment on failure to intervene claim where there were "conflicting accounts rais[ing] genuine disputes of material fact" as to the defendant officer's knowledge and collecting cases); *Snead v. City of New York*, 463 F. Supp. 3d 386, 400 (S.D.N.Y. 2020) (denying summary judgment on failure to intervene claim where the defendant officers testified to being "mere feet away" from the plaintiff when he was arrested and did not present "undisputed evidence such that *no* reasonable jury could conclude that [they] had a realistic opportunity to intervene in [the] alleged constitutional violations"); *see also Figueroa v. Mazza*, 825 F.3d 89, 108 (2d Cir. 2016) (concluding that failure

18

to intervene claims, "even assuming that the assault lasted less than twenty seconds," were for the jury to decide).

Moreover, Defendants' qualified immunity argument does not take into account Plaintiff's version of events—that an officer had a knee on his back exerting pressure for up to minutes after he was handcuffed. They therefore have not demonstrated that Trooper Buck is entitled to qualified immunity at this stage.

Accordingly, Trooper Buck is not entitled to summary judgment on Plaintiff's failure to intervene claim.

### 2.    Trooper Giannettino

Defendants argue that Trooper Giannettino is entitled to summary judgment on Plaintiff's failure to intervene claim because there is no evidence that Trooper Giannettino knew that any excessive use of force via K-9 Rylo was going to be, or was being committed; that he had a reasonable opportunity to intervene; or that he did not take reasonable steps to intervene. Dkt. No. 72-2 at 29-30. Defendants also argue that Trooper Giannettino is entitled to qualified immunity. Defendants' argument does not account for Plaintiff's version of events and the material factual disputes identified by the Court in connection with the excessive force claim against Trooper Buck. *See supra* Section III.B.1.

To the extent Trooper Giannettino argues that he could not have intervened in the K-9 use of force because he was not K-9 Rylo's handler, the Court rejects that argument. The district court in *Nuzzo* rejected a similar argument that the defendants "had no legal authority to second-guess the dog handlers' decisions about when and how to deploy their dogs." 494 F. Supp. 3d at 238. There is "no 'act of dog' exception" to an officer's duty to intervene if other officers use excessive force: the "rules are no different because the police decide to use a dog rather than another means of force." *Id.*; *see also Maye v. Vargas*, 638 F. Supp. 2d 256, 264 (D. Conn. 2009) (denying

19

summary judgment on failure to intervene in excessive force by way of police dog bites to non-handlers who "were in the vicinity of the attack" and had a realistic opportunity to intervene). Trooper Giannettino does not explain, for example, why a reasonable intervention could not take the form of entreating Trooper Buck to disengage K-9 Rylo once Plaintiff was secured.

In *Mendoza v. McLean*, No. 14-cv-3231, 2016 WL 3542465, at *4-5 (S.D.N.Y. June 23, 2016), the district court denied summary judgment to an officer on a failure to intervene claim where there was evidence that the officer was "nearby when the dog bit plaintiff" and the dog was "ordered to attack plaintiff when he was not resisting arrest." *Id.* There was also evidence suggesting that the incident involving the police dog lasted "long enough for another police officer to have intervened." *Id.* (noting that the canine handler testified that the struggle between the plaintiff and the police dog lasted a "minute or 2"). Here, Plaintiff not only testified that K-9 Rylo continued to bite his leg for multiple minutes after he was handcuffed, but he also testified that he heard an officer from the Cayuga County Sheriff's Office saying "get the dog off him." Dkt. No. 72-5 at 82, 84, 85. A reasonable jury could conclude from this evidence that Trooper Giannettino, who was in the immediate vicinity, had a realistic opportunity to intervene in Trooper Buck's alleged excessive force.

Furthermore, given the factual disputes identified, Trooper Giannettino's cursory argument does not demonstrate his entitlement to qualified immunity at this stage. Accordingly, Trooper Giannettino is not entitled to summary judgment on Plaintiff's failure to intervene claim.

## IV.    CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendants' motion for summary judgment, Dkt. No. 72, is **DENIED**; and it is further

20

**ORDERED** that the Clerk shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated:  August 13, 2026

Elizabeth C. Coombe
U.S. District Judge